CABRINI B. LEPIS, PLAINTIFF-RESPONDENT, v. JAMES G. LEPIS, DEFENDANT-APPELLANT.

Argued January 7, 1980—Decided June 11, 1980.

---

142

*Gary N. Skoloff* argued the cause for appellant (*Skoloff & Wolfe*, attorneys).

*John E. Finnerty* argued the cause for respondent.

The opinion of the Court was delivered by

PASHMAN, J.

Long after the bonds of matrimony are dissolved, courts of equity are frequently called upon to reassess the persisting

obligations of financial support. This case presents for review the standards and procedures for modifying support and maintenance arrangements after a final judgment of divorce.

The parties were married in 1961 and had three children. After a period of marital discord, on January 8, 1974, the wife obtained from the Superior Court, Chancery Division, a judgment of divorce on grounds of desertion. The court incorporated as part of the judgment a detailed agreement governing property distribution, alimony, child custody and support.

Under the terms of the agreement, the wife retained all the household items and "any and all other tangible personal property" located at the marital home. She received title to the marital home and the husband's two-year old automobile. Upon entry of a final judgment of divorce and judicial ratification of the agreement, the husband would make a single payment of $22,000 "in settlement of the Wife's claim to her right for equitable distribution and any other support claims of the Wife now or at any time in the future except as provided herein."

The agreement permitted the wife to retain custody of the children and provided flexible visitation provisions. The husband agreed to pay $120 per week for alimony and $210 per week for child support—$70 per week for each unemancipated child. A child's attendance at college, business or trade school would not terminate support payments. The husband was obligated to maintain health insurance for the wife until her death or remarriage and for each child until emancipated. He was also responsible for all necessary medical, dental and prescription drug expenses of the children and for the wife's medical, dental and prescription drug expenses in excess of $50 per illness. The husband promised to pay all expenses for four years of college or professional education for each child. If a child lived away at school, child support would be reduced by some "appropriate" amount.

Looking to future uncertainties, the agreement sought to remove some of them from consideration if questions regarding modification arose. It specified that the presence or absence of separate earnings by the wife, or changes in the husband's income, would be irrelevant to a decision to alter or halt the husband's payments. The agreement also contained a provision governing modification by consent:

This Agreement shall not be varied, modified or annulled by the Husband or the Wife except by written instrument voluntarily executed and acknowledged by both.

On February 1, 1978, plaintiff moved to modify the support and alimony provisions of the agreement. She sought increased support for herself and the three children, a single, additional payment of $1,500 for household repairs and furniture, and counsel fees. Plaintiff also sought production of defendant's 1976 and 1977 income tax returns before a hearing on the modification motion. The trial court denied the motion without requiring defendant to disclose actual earnings. Plaintiff's request for counsel fees was also denied.

Plaintiff appealed from these rulings to the Appellate Division on April 19, 1978. On the following day she filed a notice of motion for rehearing of her motion for modification. Defendant responded by filing a notice of cross-motion for counsel fees and costs on the ground that plaintiff's motion for rehearing was frivolous. The trial court denied a rehearing, noting that by virtue of the pending appeal the court lacked jurisdiction to grant it. Because the application for a rehearing was clearly without merit, the court granted defendant's cross-motion for counsel fees. Plaintiff sought review in the Appellate Division of this second determination which was consolidated with her earlier appeal.

In an unreported opinion, the Appellate Division reversed the trial court's dispositions. The court held that "[o]nly after the discovery process is complete should the former wife's application for increased alimony and child support be determined."

The Appellate Division concluded that refusing discovery of defendant's income despite plaintiff's showing of increased need "effectively denied her any opportunity to prove changed circumstances * * *." Since the court viewed plaintiff's application as requiring further examination, it held that the award of counsel fees was premature. It therefore vacated the trial court's orders and remanded the cause with directions to order production of all tax returns of defendant since 1973.

This Court granted defendant's petition for certification. 81 N.J. 281 (1979). We now affirm. Before addressing whether the summary rejection of plaintiff's claims was proper, we first discuss the effect of a consensual agreement upon the court's power to modify obligations of support and maintenance. Secondly, we examine generally what constitutes "changed circumstances" so as to warrant a modification of those obligations. We then consider the procedures that a court should employ when passing upon a modification petition—particularly the allocation of the burdens of proof and the conditions for compelling production of tax returns. Finally, we apply the results of this analysis to the facts of the present case.

I

*Modification of Spousal Agreements*

■ The equitable power of the courts to modify alimony and support orders at any time is specifically recognized by *N.J.S.A.* 2A:34–23:

> Pending any matrimonial action brought in this State or elsewhere, or after judgment of divorce or maintenance, whether obtained in this State or elsewhere, the court may make such order as to the alimony or maintenance of the parties, and also as to the care, custody, education and maintenance of the children, or any of them, as the circumstances of the parties and the nature of the case shall render fit, reasonable and just, and require reasonable security for the due observance of such orders. * * * Orders so made may be revised and altered by the court from time to time as circumstances may require.

As a result of this judicial authority, alimony and support orders define only the present obligations of the former spouses. Those duties are always subject to review and modification on a showing of "changed circumstances." *Chalmers v. Chalmers,* 65 *N.J.* 186, 192 (1974); *Martindell v. Martindell,* 21 *N.J.* 341, 352–353 (1956); *Boorstein v. Boorstein,* 142 *N.J.Eq.* 135 (E & A 1948); *Parmly v. Parmly,* 125 *N.J.Eq.* 545, 548–549 (E & A 1939).

Divorcing spouses have often attempted to temper the flexibility of the court's power to modify with greater predictability by entering into separation agreements. In the past, such agreements have had significant and varying impact on the availability of post-judgment modification. Specific performance of spousal support agreements was once thought to be barred by the flexible approach to modification embodied in *N.J.S.A.* 2A:34–23. *Apfelbaum v. Apfelbaum,* 111 *N.J.Eq.* 529 (E & A 1932). Although not specifically enforceable, such agreements could be regarded by the court as relevant to the issue of support, and could be incorporated in a divorce decree. "The fact that [a] court took over the terms of the contract did not impair the power of the court to alter such provisions to accord with the equity of unfolding circumstance." *Corbin v. Mathews,* 129 *N.J.Eq.* 549, 554 (E & A 1941). The agreement was said to merge into the divorce decree, thereby losing its contractual nature. *Id.* at 553; *Schluter v. Schluter,* 23 *N.J.Super.* 409, 416 (App.Div.1952), certif. den., 11 *N.J.* 583 (1953).

The rule against specific enforcement was later rejected by this Court in *Schlemm v. Schlemm,* 31 *N.J.* 557 (1960). That decision recognized that apart from its statutory authority, the Superior Court may exercise its "highly flexible" remedial powers to enforce the terms of interspousal support agreements "to the extent that they are just and equitable." *Id.* at 581–582. Later decisions continued to recognize the courts' power to modify such agreements "upon a showing of changed circumstances." *Berkowitz v. Berkowitz,* 55 *N.J.* 564, 569 (1970); see

*Gulick v. Gulick*, 113 *N.J.Super.* 366, 370 (Ch.Div.1971). The rule which developed, however, required that "[a] far greater showing of changed circumstances must be made before the court can modify a separation agreement than need be shown to warrant the court amending an order for alimony or support." *Schiff v. Schiff*, 116 *N.J.Super.* 546, 561 (App.Div.1971), certif. den. 60 *N.J.* 139 (1972). Applying the "same standard that is applied by courts of equity to the specific enforcement of contracts in other fields[,]" the Appellate Division in *Schiff* held that modification of a spousal agreement required a showing of changed circumstances "such as to convince the court that to enforce the agreement would be *unconscionable.*" 116 *N.J.Super.* at 561 (emphasis supplied). "Subsequent events which should have been in contemplation of the parties as possible contingencies when they entered into the contract [would] not excuse performance." *Id.* Although this standard was never expressly adopted by the Supreme Court, it has been followed by lower courts.[1] See, *e. g., Skillman v. Skillman*, 136 *N.J.Super.* 348 (App.Div. 1975); *Edelman v. Edelman*, 124 *N.J.Super.* 198 (Ch.Div.1973).

In *Smith v. Smith*, 72 *N.J.* 350 (1977), this Court considered whether the *Schiff* standard applied when the trial court was effecting equitable distribution of marital property pursuant to *N.J.S.A.* 2A:34–23. Noting that "support payments are intimately related to equitable distribution" and that "trial judges should have the utmost leeway and flexibility in determining what is just and equitable in making allocations of marital assets," we disapproved of the *Schiff* rule:

> Henceforth the extent of the change in circumstances, whether urged by plaintiff or defendant, shall be the same, regardless of whether the support

---

[1] The *Schiff* rule, however, was not extended to modification of child support provisions. See *Clayton v. Muth*, 144 *N.J.Super.* 491 (Ch.Div.1976).

payments being questioned were determined consensually or by judicial decree. In each case the court must determine what, in the light of all the facts presented to it, is equitable and fair, giving due weight to the strong public policy favoring stability of arrangements. [72 *N.J.* at 360]

The rule announced in *Smith* is fully applicable when considering post-judgment modification. Consensual agreements and judicial decrees should be subject to the same standard of "changed circumstances." Initially it might appear that this rule would diminish the advantages of separation and property settlement agreements, since they would provide no greater certainty or stability than a judicial determination. However, granting a greater degree of permanence to negotiated agreements would tend to make them a riskier arrangement for spouses who are likely to be harmed by changed circumstances. Typically, they have been spouses who are economically dependent; they generally have been wives with custody of children. Often consensual agreements would not be in their best interests if only "unconscionable" circumstances would warrant modification.[2] As we recognized in rejecting *Schiff*, contract principles have little place in the law of domestic relations. See *Smith*, 72 *N.J.* at 360.

When we first upheld the specific enforceability of spousal agreements in *Schlemm*, we relied on the flexible power of equity to enforce such agreements only to the extent that they were fair and equitable. Similarly, the terms of such agree-

---

[2]Commentators have addressed similar arguments to the *Schiff* rule of unconscionability. See Skoloff, "*Schiff*-Unconscionable Obstacle to Matrimonial Settlements," 99 *N.J.L.J.* 553 (1976) ("The undue burden placed on counsel as well as the parties by this *Schiff* requirement is itself unconscionable. * * * The result: * * *." Id. at 553–566); Meth, "Matrimonial Arbitration," 99 *N.J.L.J.* 409 (1976) (noting that the impossibility of providing for every future contingency made "*Schiff* seem like a voice from a very ivory tower." *Id.*).

ments should receive continued enforcement without modification only so long as they remain fair and equitable. The equitable authority of a court to modify support obligations in response to changed circumstances, regardless of their source, cannot be restricted. *Smith,* 72 *N.J.* at 360; *Berkowitz,* 55 *N.J.* at 569; *Schlemm,* 31 *N.J.* at 581; *Parmly,* 125 *N.J.Eq.* at 548. We therefore find no reason to distinguish between judicial decrees and consensual agreements when "changed circumstances" call for the modification of either.

## II

### *"Changed Circumstances"*

The parties here disagree over what constitutes "changed circumstances" sufficient to justify modification of alimony and child support. Plaintiff claims that her detailed demonstration of the increased needs resulting from maturation of the children and severe inflation justifies discovery of defendant's tax returns. Such increased needs and her husband's substantiated ability to pay would, according to plaintiff, constitute "changed circumstances" warranting upward modification of alimony and child support. Defendant responds that an increase in the cost of living and the "normal wear and tear" alleged here does not even entitle plaintiff to discovery of his present earnings. He argues that the increase in need alleged, even if coupled with proof of his increased ability to pay, would not constitute "changed circumstances." According to defendant, plaintiff's position and the Appellate Division disposition are contrary to prior caselaw and will result in an avalanche of unwarranted petitions for modification.

The frequency with which courts are called upon to make or modify support awards needs no documentation. The lack of uniformity in their approaches and predictability in their decisions is similarly widely recognized. See generally Note, "Modi-

fication of Spousal Support: A Survey of a Confusing Area of the Law," 17 *J.Fam.Law* 711 (1979). In part, the inability to predict dispositions is responsible for the volume of modification motions. The solution to the problem of predictability would be a just accommodation of the power of the courts to adjust support obligations with the desirable features of stable arrangements and spousal cooperation. We conclude such an accommodation is possible through an approach linking the notion of "changed circumstances" to the initial support determination, be it judicial or consensual. This case presents an appropriate opportunity for us to clarify the proper set of coordinated standards.

## A

### *The Elements of "Changed Circumstances"*

█ The supporting spouse's obligation is mainly determined by the quality of economic life during the marriage, not bare survival. The needs of the dependent spouse and children "contemplate their continued maintenance at the standard of living they had become accustomed to prior to the separation." *Khalaf v. Khalaf*, 58 *N.J.* 63, 69 (1971); see *Bonanno v. Bonanno*, 4 *N.J.* 268, 274 (1950).[3]

> The amount is not fixed *solely* with regard, on the one hand, to the actual needs of the wife, nor, on the other, to the husband's actual means. There should be taken into account the physical condition and social position of the parties, the husband's property and income (including what he could derive from personal attention to business), and also the separate property and income of the wife. Considering all these and any other factors bearing upon the question, the sum is to be fixed at what the wife would have the right to expect as support if living with her husband. [*Bonanno*, 4 *N.J.* at 274 (quoting *Dietrick v. Dietrick*, 88 *N.J.Eq.* 560, 561–562 (E & A 1917)]

---

[3]These cases actually phrased this entitlement in terms of what a husband owes a wife. As we will discuss below, this is no longer a sound statement of contemporary domestic relations law. See *infra* at 156.

■ In accordance with this general principle, courts have recognized "changed circumstances" that warrant modification in a variety of settings. Some of them include

(1) an increase in the cost of living, see *Martindell,* 21 *N.J.* at 353;

(2) increase or decrease in the supporting spouse's income, *Martindell,* 21 *N.J.* at 355; *Traudt v. Traudt,* 116 *N.J.Eq.* 75 (E & A 1934); *Acheson v. Acheson,* 24 *N.J.Misc.* 133 (Ch.1946);

(3) illness, disability or infirmity arising after the original judgment, *e. g., Kirshbaum v. Kirshbaum,* 129 *N.J.Eq.* 429 (E & A 1941); *Limpert v. Limpert,* 119 *N.J.Super.* 438 (App.Div.1972); see *Ostrow v. Ostrow,* 59 *N.J.Super.* 299, 305–306 (App.Div.1960);

(4) the dependent spouse's loss of a house or apartment, *Jackson v. Jackson,* 140 *N.J.Eq.* 124 (E & A 1947); *McLeod v. McLeod,* 131 *N.J.Eq.* 44 (E & A 1942);

(5) the dependent spouse's cohabitation with another,[4] *Wertlake v. Wertlake,* 137 *N.J.Super.* 476 (App.Div.1975); *Garlinger v. Garlinger,* 137 *N.J.Super.* 56 (App.Div.1975); *Eames v. Eames,* 153 *N.J.Super.* 99 (Ch.Div.1976); *Grossman v. Grossman,* 128 *N.J.Super.* 193 (Ch.Div.1974);

(6) subsequent employment by the dependent spouse, *Ramhorst v. Ramhorst,* 138 *N.J.Eq.* 523 (E & A 1946); *Kavanagh v. Kavanagh,* 134 *N.J.Eq.* 358 (E & A 1944), see also *Lavene v. Lavene,* 162 *N.J.Super.* 187, 203 (Ch.Div.1978); and

(7) changes in federal income tax law, *Acheson, supra.*

Courts have consistently rejected requests for modification based on circumstances which are only temporary or which are expected but have not yet occurred. *Bonanno, supra* ; *McDonald v. McDonald,* 6 *N.J.Super.* 11 (App.Div.1949); *Sassman v. Sassman,* 1 *N.J.Super.* 306 (App.Div.1949).

When children are involved, an increase in their needs— whether occasioned by maturation, the rising cost of living or more unusual events—has been held to justify an increase in support by a financially able parent, see *Shaw v. Shaw,* 138 *N.J.Super.* 436 (App.Div.1976); *Testut v. Testut,* 34 *N.J.Super.*

---

[4]If the dependent spouse remarries, the court must modify any order or judgment to eliminate the alimony obligation on application by the supporting spouse, *N.J.S.A.* 2A:34–25; see *Sharpe v. Sharpe,* 109 *N.J.Super.* 410 (Ch.Div. 1970).

95 (App.Div.1955); *Clayton v. Muth,* 144 *N.J.Super.* 491 (Ch.Div. 1976). Their emancipation and employment may warrant reduction in their support, see, *e. g., Kavanagh v. Kavanagh, supra* ; *Rufner v. Rufner,* 131 *N.J.Eq.* 193 (E & A 1942); see also *Grotsky v. Grotsky,* 58 *N.J.* 354 (1971).

■ This review of New Jersey decisions [5] reveals the factors that a court of equity must assess when determining whether the former marital standard of living is being maintained. When support of an economically dependent spouse is at issue, the general considerations are the dependent spouse's needs, that spouse's ability to contribute to the fulfillment of those needs, and the supporting spouse's ability to maintain the dependent spouse at the former standard. The decision to modify child support requires a similar examination of the child's needs and the relative abilities of the spouses to supply them.

■ Our analysis makes clear that "changed circumstances" are not limited in scope to events that were unforeseeable at the time of divorce. This is particularly obvious in cases involving modification of child support orders, where maturation is cited as justifying an increase in support by a financially able parent. See, *e. g., Shaw v. Shaw, supra.* The supporting spouse has a continuing obligation to contribute to the maintenance of the dependent spouse at the standard of living formerly shared. So long as this duty continues, objective notions of foreseeability— what the parties or the court could or should have foreseen—are all but irrelevant. The proper criteria are whether the change in circumstance is continuing and whether the agreement or decree has made explicit provision for the change. An increase in support becomes necessary whenever changed circumstances

[5]Caselaw in other jurisdictions is in substantial accord. See 24 *Am.Jur.2d,* Divorce and Separation, §§ 665–690, 844–850 (1966); Annot., 89 *A.L.R.2d* 7 (1963); Annot., 18 *A.L.R.2d* 10 (1951).

substantially impair the dependent spouse's ability to maintain the standard of living reflected in the original decree or agreement. Conversely, a decrease is called for when circumstances render all or a portion of support received unnecessary for maintaining that standard. After finding that the dependent spouse cannot maintain the original standard of living, the court must consider the extent to which the supporting spouse's ability to pay permits modification.

█ If the existing support arrangement has in fact provided for the circumstances alleged as "changed," it would not ordinarily be "equitable and fair," *Smith*, 72 *N.J.* at 360, to grant modification. For example, although a spouse cannot maintain the marital standard of living on the support payments received, this would not ordinarily warrant modification if it were shown that a single large cash payment made at the time of divorce was included with the express intention of meeting the rising cost of living.[6] In other cases, the equitable distribution award—which we have recognized is intimately related to support, *id.*—might have been devised to provide a hedge against inflation. The same might be true with respect to child support. A lump sum payment or a trust established for the benefit of the children could be shown to have been designed to cover the certain eventuality of increasing needs.

B

*Judicial Provision for Changed Circumstances*

█ As a practical matter, spousal agreements have great potential for ensuring the desired degree of stability in support arrangements. See, *e. g., Petersen v. Petersen*, 172 *N.J.Super.* 304 (App.Div.1980); *DeGraaff v. DeGraaff*, 163 *N.J.Super.* 578

---

[6]Of course under the standard for modification stated in *Smith*, should such a provision later prove inadequate, the court is free to require greater support if it is warranted in the light of prevailing circumstances. See 72 *N.J.* at 360.

(App.Div.1978). Such agreements have traditionally been more comprehensive and particularized than court orders, and thus more carefully tailored to the peculiar circumstances of the parties' lives.[7] In view of the current economic conditions and the changing social structure of the family—particularly with regard to women's roles, *cf. Orr v. Orr*, 440 *U.S.* 268, 99 *S.Ct.* 1102, 59 *L.Ed.2d* 306 (1979)—courts, too, should make greater efforts to provide in advance for change. This would enhance the stability of judicially fashioned arrangements and make unnecessary a return to court. The power to distribute property equitably should be exercised to relieve the strain of total reliance on support payments for financial security. See *Rothman v. Rothman*, 65 *N.J.* 219, 229 (1974); see also *Smith*, 72 *N.J.* at 360; *Painter v. Painter*, 65 *N.J.* 196, 218 (1974). Courts have refused to consider an alimony award in isolation; the earnings received from investments funded by an equitable distribution award have been considered when determining the adequacy of the dependent spouse's income. *Esposito v. Esposito*, 158 *N.J. Super.* 285, 300 (App.Div.1978). "As a result of the equitable distribution plaintiff will have available a substantial capital fund to invest in order to produce additional income." *Lavene v. Lavene*, 162 *N.J.Super.* at 203.

---

[7]For examples of separation and property settlement agreements, see G. Skoloff, *Family Law Practice* 330–349 (1976 ed.); 11 D. Herr, *New Jersey Practice—Marriage, Divorce and Separation* § 789 (3d ed. 1963) and § 793.7 (Supp.1978). See also *Berkowitz*, 55 *N.J.* at 569–570. In that case the parties provided that on the wife's remarriage the husband would convey his interest in the residence to the wife in return for cancellation of his obligations regarding it. They also made financial arrangements for the children's attendance at college away from home and a consequent reduction in child support. The court therefore denied the husband's motion for reduction of child support on grounds of the wife's remarriage: "[A]ll of the alleged 'changed circumstances' were envisioned by the parties and *dealt with* specifically in the Agreement." *Id.* at 570 (emphasis supplied).

■ A closer look should also be taken at the supported spouse's ability to contribute to his or her own maintenance, both at the time of the original judgment and on applications for modification.[8] The fact that our State's alimony and support statute is phrased without reference to gender, *N.J.S.A.* 2A:34–23, will accomplish little if judicial decision making continues to employ sexist stereotypes. The extent of actual economic dependency, not one's status as a wife, must determine the duration of support as well as its amount. See *Lavene,* 162 *N.J.Super.* at 203; *Turner v. Turner,* 158 *N.J.Super.* 313 (Ch.Div. 1978) (court reviewed purpose of alimony and, based on the equitable distribution award and the wife's anticipated earning capacity, awarded alimony only for 18 months).[9]

Not only the realities of the marketplace, but also the consti-

---

[8]At times courts have found it necessary to assess the *supporting* spouse's ability to pay without regard to current earnings to determine fair and equitable support. *See, e. g., Hess v. Hess,* 134 *N.J.Eq.* 360 (E & A 1944). The same should be done when the *supported* spouse's earning potential is an issue.

[9]In *Arnold v. Arnold,* 167 *N.J.Super.* 478 (App.Div.1979), the Appellate Division concluded that in the absence of unusual facts, automatic cutoff dates for alimony should be avoided. While we disapprove of the general approach in *Arnold,* the trial court in that case made no investigation of the nature of the wife's employment potential, and for this reason the 30-month limitation was justifiably seen as arbitrary. Careful and explicit factfinding on the earning ability of the dependent spouse is of paramount importance in such cases.

We do not share the view that only unusual cases will warrant the "rehabilitative alimony" approach. We note that other states permit such awards. See, *e. g., Fla.Stat.Ann.* § 61.08 (West Supp.1979); *Haw.Rev.Stat. Ann.* § 580–47 (Supp.1979). See also *Cal.Civ.Code* § 4806 (Supp.1980) (court may withhold support allowance to a party who is "earning his or her own livelihood"); *Ind.Code Ann.* § 31–1–11.5–9 (Burns 1979) (prohibiting maintenance of party unless he or she is physically or mentally incapable of supporting himself or herself).

tutional guarantee of "the equal protection of the laws," *U.S. Const.*, Amend. XIV, compels this approach. It is no longer permissible to ground the law of domestic relations in the " 'old notio[n]' that 'generally it is the man's primary responsibility to provide a home and its essentials.' " *Orr v. Orr*, 440 *U.S.* at 279–280, 99 *S.Ct.* at 1112, 59 *L.Ed.2d* at 319 (quoting *Stanton v. Stanton*, 421 *U.S.* 7, 10, 95 *S.Ct.* 1373, 1375, 43 *L.Ed.2d* 688, 692 (1975)). "No longer is the female destined solely for the home and the rearing of the family, and only the male for the marketplace and the world of ideas." *Orr*, 440 *U.S.* at 280, 99 *S.Ct.* at 1112, 59 *L.Ed.2d* at 319 (quoting *Stanton*, 421 *U.S.* at 14–15, 95 *S.Ct.* at 1377–1378); see *Taylor v. Louisiana*, 419 *U.S.* 522, 535 n.17, 95 *S.Ct.* 692, 700 n.17, 42 *L.Ed.2d* 690 (1975); *Craig v. Boren*, 429 *U.S.* 190, 198, 97 *S.Ct.* 451, 457, 50 *L.Ed.2d* 397 (1976). The law must be concerned with the economic realities of contemporary married life, not a model of domestic relations that provided women with security in exchange for economic dependence and discrimination. This does not mean that relative economic dependence—when proven—is irrelevant to the determination of support obligations. But a court of equity cannot rely on antiquated presumptions; gender is no longer a permissible proxy for economic need. See *Orr*, 440 *U.S.* at 281, 99 *S.Ct.* at 1112, 59 *L.Ed.2d* at 320. The need for support must be assessed with a view towards the earning capacity of the individual woman in the marketplace.

Careful consideration of all these factors at the time of divorce and at the time modification is sought will eventually reduce the necessity for otherwise well-founded postjudgment applications. It may also lessen the need for plenary hearings on modification motions. We are confident that any increased expenditure of judicial time necessitated by this expanded inquiry will be more than offset by savings from a reduced need for modification hearings.

## III

### *Procedural Guidelines*

The parties here disagree on the proper procedure for courts to follow on modification motions. In particular they dispute both the necessity and the elements of a *prima facie* showing of changed circumstances prior to discovery of the respondent's financial status. We therefore think it appropriate to explain procedures to be followed in the postjudgment setting.

The party seeking modification has the burden of showing such "changed circumstances" as would warrant relief from the support or maintenance provisions involved. *Martindell*, 21 *N.J.* at 353. A *prima facie* showing of changed circumstances must be made before a court will order discovery of an ex-spouse's financial status. When the movant is seeking modification of an alimony award, that party must demonstrate that changed circumstances have substantially impaired the ability to support himself or herself. This requires full disclosure of the dependent spouse's financial status, including tax returns. When the movant is seeking modification of child support, the guiding principle is the "best interests of the children." See *Hallberg v. Hallberg*, 113 *N.J.Super.* 205, 209 (App.Div.1971); *Clayton v. Muth*, 144 *N.J.Super.* at 493. A *prima facie* showing would then require a demonstration that the child's needs have increased to an extent for which the original arrangement does not provide.

Only after the movant has made this *prima facie* showing should the respondent's ability to pay become a factor for the court to consider. Therefore, once a *prima facie* case is established, tax returns or other financial information should be ordered. We recognize that individuals have a legitimate interest in the confidentiality of their income tax returns. However, without access to such reliable indicia of the supporting spouse's financial ability, the movant may be unable to prove that

modification is warranted. Similarly, without knowledge of the financial status of both parties, the court will be unable to make an informed determination as to "what, in light of all the [circumstances] is equitable and fair." *Smith*, 72 *N.J.* at 360. Courts have recognized that discovery and inspection of income tax returns should only be permitted for good cause.[10] See *DeGraaff v. DeGraaff*, 163 *N.J.Super.* 578 (App.Div.1978); see also *Ullmann v. Hartford Fire Ins. Co.*, 87 *N.J.Super.* 409 (App. Div.1965); *Finnegan v. Coll*, 59 *N.J.Super.* 353 (Law Div.1960). Because financial ability of the supporting spouse may be crucial to the proper disposition of a motion for modification, we conclude that a *prima facie* showing of changed circumstances meets this good cause standard. We also recognize, however, that the financial information of other individuals may be necessarily involved, as where the supporting spouse has remarried and filed joint returns with the new spouse. In such circumstances the court should follow the procedure outlined by the court in *DeGraaff*: the trial judge should examine the tax return *in camera* and excise irrelevant matters before giving the return to the plaintiff. 163 *N.J.Super.* at 583.

---

[10] *R.* 4:79–5 provides:

> Interrogatories as to all issues in all matrimonial actions may be served by any party as of course pursuant to *R.* 4:17. All other discovery in matrimonial actions shall be permitted only by leave of court for good cause shown.

On its face this rule would appear to require good cause for the production of tax returns. However, *R.* 4:17 provides that the interrogatories may include a request for a copy of any paper. As the Comment to that rule observes, income tax returns, although pieces of paper, are not routinely discoverable. See Pressler, *Current N.J. Court Rules*, Comment *R.* 4:17 at 703 (1980). The Comment to *R.* 4:79–5 also notes that in the context of a matrimonial dispute, discovery can easily be subject to "abuse as a device by which one spouse harasses the other." *Id.* at 982. For these reasons we agree that discovery of income tax returns on motions for modification of support is not desirable without a *prima facie* showing of changed circumstances.

■ Once the above steps have been completed, the court must decide whether to hold a hearing. Although equity demands that spouses be afforded an opportunity to seek modification, the opportunity need not include a hearing when the material facts are not in genuine dispute. We therefore hold that a party must clearly demonstrate the existence of a genuine issue as to a material fact before a hearing is necessary. See *Shaw v. Shaw*, 138 *N.J.Super.* at 440; *Hallberg v. Hallberg*, 113 *N.J.Super.* at 208; *Tancredi v. Tancredi*, 101 *N.J.Super.* 259, 262 (App.Div.1968). Without such a standard, courts would be obligated to hold hearings on every modification application. The application of the equitable principles we have outlined does not require elaborate procedures in every case. Courts should be free to exercise their discretion to prevent unnecessary duplication of proofs and arguments. The volume of postjudgment litigation provides additional, practical support for this approach.

In determining whether a material fact is in dispute, a court should rely on the supporting documents and affidavits of the parties. Conclusory allegations would, of course, be disregarded. Only statements to which a party could testify should be considered. Thus, if the sole dispute centered around the supporting spouse's earnings, the disclosure of income tax returns might render a hearing unnecessary.

## IV

### *The Present Motion for Modification*

■ Applying the foregoing standards and guidelines to the facts of this case, we conclude that the Appellate Division was correct in reversing the trial court's denial of plaintiff's motion and directing production of defendant's tax returns. Plaintiff has alleged with specificity the increases in her own and her children's needs caused by substantial inflation and the rising cost of supporting growing children. These changes in circum-

stances will apparently continue. They clearly warrant court inquiry into whether plaintiff's ability to maintain herself and her children has been substantially impaired.

By reason of plaintiff's *prima facie* showing, defendant should be required to disclose the requested evidence of his income, subject to the protections outlined above. See *supra* at 55. On remand, the trial court must then determine, among other things, whether the earlier agreement, as incorporated in the divorce judgment, provided for the present circumstances. Since the record clearly discloses genuine disputes as to material facts other than defendant's earnings, a hearing will be necessary.

As defendant points out, the agreement provided that the increased income of either spouse "shall not be a consideration to change or modify the support and maintenance payments for the Wife or the Wife and children." This might appear to be a valid accommodation of contingencies which otherwise would support modification based on "changed circumstances"—the wife's post-divorce employment or an increase in the husband's earnings. But as we have stated, the court is not bound by such provisions. It should scrutinize carefully the dependent spouse's ability to contribute to her own and her children's maintenance. The court must determine whether there has been substantial impairment of their ability to maintain the standard of living to which they are entitled.

Plaintiff, who was a teacher before her marriage, holds a Master's degree in Speech Communication and is continuing her education towards earning a Ph.D. She contends, however, that she has been unable to find substantial employment to bridge the gap between needs and expenses, and that employment in positions for which she is substantially overqualified would diminish her self image or esteem. Defendant asserts that plaintiff has unreasonably restricted her choice of employment fields. He points out that plaintiff's background and age and the children's maturity and attendance in school make her

failure to find full-time employment while continuing her education unreasonable. These disputes must be addressed by the trial court on remand.

Defendant alleges that a $22,000 lump sum payment to plaintiff incorporated in their agreement should be recognized as the agreed means for covering the increased needs which plaintiff alleges—especially with respect to repairs to her present home. Whether this amount should be so considered is a question of fact for the court. While the supported spouse need not completely deplete savings to qualify for increased support, see *Capodanno v. Capodanno*, 58 *N.J.* 113, 118 (1971); *Khalaf*, 58 *N.J.* at 70; *Martindell*, 21 *N.J.* at 354, neither can that spouse be permitted unilaterally to designate her funds, as plaintiff attempts to do here, for the children's college education. This is so particularly in light of defendant's obligation under the agreement to pay for the expense of higher education. Any contention that the defendant will not perform this duty must be rejected as premature. When and if such college expenses arise and defendant fails to fulfill his obligation, a court is free to order defendant to make the required payments.[12]

It appears that no provision has been made for any increase in the support necessary for growing children. On remand, the court therefore must determine whether the best interests of the children require greater support, to what extent the defendant is obligated to provide for their increased needs and whether he has the financial ability to do so. While the children are entitled to a determination based on their best interests, both parents have a duty to support them. *Ionno v. Ionno*, 148 *N.J.Super.* 259, 261–262 (App.Div.1977); *Shanley v. Nuzzo*, 160 *N.J.Super.* 436, 441–442 (J&D R.Ct.1978). Accordingly, the en-

[12]If circumstances have changed in such a way that requiring defendant to pay for college would no longer be equitable and fair, the court also remains free to alter the prior arrangement. See *Rufner v. Rufner*, 131 *N.J.Eq.* at 196; see also *Khalaf*, 58 *N.J.* at 71–72.

tire amount of increased need is not necessarily to be assessed against defendant, unless the children's needs cannot otherwise be met. See *Clayton v. Muth*, 144 *N.J.Super.* at 496.

Finally, we agree with the Appellate Division that a determination regarding an award of counsel fees should await resolution of these issues on remand.

For the foregoing reasons, the judgment of the Appellate Division is affirmed. The matter is remanded for further proceedings in accordance with this opinion.

*For affirmance*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER and POLLOCK —6.

*For reversal*—None.