618 A.2d 381

SUZANNE M. SMITH, PLAINTIFF, v. RAYMOND
W. SMITH, DEFENDANT.

Superior Court of New Jersey
Chancery Division Middlesex County

September 9, 1992.

*Toby Solomon* for the plaintiff.

*Paul H. Townsend* for the defendant (*Hannoch Weisman* attorneys).

WOLFSON, J.S.C.

The parties in this case were divorced on October 25, 1985, after a 23 year marriage. Incorporated into the judgment of divorce was a separation and property settlement agreement setting forth their respective rights and obligations, including a provision that rehabilitative alimony be paid to plaintiff for six years. The agreement stated in relevant part:

"The parties contemplate termination of alimony in no more than 6 years, *regardless of changed circumstances.*" (emphasis supplied).

Plaintiff brings this post-judgment motion to continue the alimony payments beyond the six year period because of "changed circumstances" which she asserts, entitles her to relief under *Lepis v. Lepis*, 83 *N.J.* 139, 416 *A.*2d 45 (1980). In response to the motion, the defendant, predictably, raises the "anti-*Lepis*" clause as an absolute bar to the relief sought.

■ The issue, to date addressed by only a single trial judge, is whether an "anti-*Lepis*" clause prohibiting modification of a property settlement agreement regardless of changed circumstances, is void under the law and public policy of this State, or rather, is enforceable according to its terms.

In *Finckin v. Finckin*, 240 *N.J.Super.* 204, 206, 572 *A.*2d 1199 (Ch.Div.1990), the trial court, without explanation, concluded that an "anti-*Lepis*" clause was not prohibited by public policy considerations. While acknowledging that *Lepis* permits modification under certain circumstances, the court noted:

[T]his property settlement agreement clearly incorporates language of non-modifiability in order to provide greater finality. This practice has been recognized by the courts. *Hurley v. Hurley,* 230 *N.J.Super.* 493 [553 *A.*2d 891] (Ch.Div. [L.Div.] 1988). "In essence, defendant applies to this court to be relieved from his obligations set forth in a fully negotiated agreement with plaintiff for which each party gave due and full consideration." *Harris v. Harris,* 235 *N.J.Super.* 434, 438–439 [563 *A.*2d 64] (Ch.Div.1989).

*Id.*

This court respectfully disagrees with the conclusion reached in *Finckin, supra,* and, for the reasons set forth below, holds that an "anti-*Lepis*" clause, which seeks to preclude the exer-

cise of this court's *equitable responsibility* to review and, if warranted, to modify support obligations in response to changed circumstances, is contrary to the public policy of this State as reflected in its legislative acts and its judicial decisions.

Attempts to preclude continuing judicial scrutiny of the fairness of a property settlement agreement through self-executing or "automatic" provisions have been specifically rejected by the Supreme Court. In *Petersen v. Petersen,* 85 *N.J.* 638, 644, 428 *A.*2d 1301 (1981) the court concluded that an escalator clause that tied increases in support to the net income of the obligated spouse, could not automatically be enforced and, held instead that enforcement was subject to continuing judicial supervision. Thus, a party affected by such a self-executing provision may not only seek its modification, but may even seek to set it aside. *Id.* at 644, 428 *A.*2d 1301. *See also, Edgerton v. Edgerton,* 203 *N.J.Super.* 160, 171, 496 *A.*2d 366 (App.Div.1985) (because interspousal agreements are enforceable only in equity, they are subject to the court's continued supervisory control).

Many of the policy considerations which caused the Supreme Court to reject a rule granting a greater degree of permanence for negotiated agreements, as contrasted with judicial decrees, are equally relevant to adjudging the validity of an "anti-*Lepis* " clause. As recognized by the Supreme Court in *Lepis* :

[G]ranting a greater degree of permanence to negotiated agreements would tend to make them a riskier arrangement for spouses who are likely to be harmed by changed circumstances. Typically, they have been spouses who are economically dependent; they generally have been wives with custody of children. Often consensual agreements would not be in their best interests if only "unconscionable" circumstances would warrant modification. As we recognized in rejecting *Schiff* [*v. Schiff,* 116 *N.J.Super.* 546, 283 *A.*2d 131 (App. Div.1971) ], contract principles have little place in the law of domestic relations. (footnote and citation omitted).

*Id.,* 83 *N.J.* at 148, 416 *A.*2d 45.

To advance and safeguard these articulated interests, the Court relied upon the flexible power of equity to enforce property settlement agreements only to the extent that they

were fair and equitable. *Lepis, supra,* 83 *N.J.* at 148, 416 *A.*2d 45. Its cautionary admonition bears repeating here:

> [T]he terms of such agreements should receive continued enforcement without modification only so long as they remain fair and equitable. The equitable authority of a Court to modify support obligations in response to changed circumstances, regardless of their source, *cannot be restricted.* (Citations omitted) (emphasis supplied).

*Id.* at 149, 416 *A.*2d 45.

It is true that consensual solutions to vexatious matrimonial problems should be encouraged. They advance separate, but still important public policies of this State favoring non-judicial dispute resolution, stability and finality in litigation. Although the court is loathe to reject such voluntary agreements "out of hand", an "anti-*Lepis*" clause which, by definition, *precludes* the court from fulfilling its equitable responsibility to enforce property settlement agreements *only* when fair and equitable, or to modify them in response to changing circumstances, is directly contrary to the very heart and soul of that which the Supreme Court sought to guarantee in *Lepis, supra,* and *Petersen, supra.*

Since the court's authority to modify support obligations in response to changed circumstances *cannot* be restricted, *Lepis, supra,* 83 *N.J.* at 149, 416 *A.*2d 45, resolution of the pending motion is achievable only through a careful judicial analysis of the present circumstances of the parties. If the existing support agreement has in fact provided for the very circumstances alleged to have "changed", it may not be "equitable and fair" to grant a modification. *Id.* at 153, 416 *A.*2d 45. If, as the defendant contends here, "trade-offs" between the distribution of assets and the support obligations were negotiated and made, such trade-offs may be taken into account in determining whether an award of alimony should be modified and, if so, to what extent, *Shifman v. Shifman,* 211 *N.J.Super.* 189, 195, 511 *A.*2d 687 (App.Div.1986). Where such provisions later prove to be inadequate, however, the court is obliged to require greater support if warranted by the "prevailing circum-

stances" of the parties. *Lepis, supra,* 83 *N.J.* at 153, n. 6, 416 *A.*2d 45.

It is evident from the certifications submitted in this case that a plenary hearing is necessary to adjudicate whether the existing agreement provides for the alleged change in circumstances through compensating trade-offs and whether, in light of the prevailing circumstances of the parties, continued enforcement of the agreement remains fair and equitable. Accordingly, the matter will be scheduled for a plenary hearing. As required by *Petersen, supra,* the plaintiff will bear the burden of establishing that the terms of the agreement, in light of changing circumstances, are no longer fair and equitable. *Id.,* 85 *N.J.* at 644, 428 *A.*2d 1301. Plaintiff's pending motion is therefore reserved pending the outcome of the anticipated plenary hearing.