263 N.J. Super. 237 (1993)
622 A.2d 909
MAUREEN MORRIS, PLAINTIFF-RESPONDENT,
v.
J. ROY MORRIS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 9, 1993.
Decided March 26, 1993.
*238 Before Judges DREIER, SKILLMAN, VILLANUEVA[1].
James E. Mackevich argued the cause for appellant (Mackevich & Burke, attorneys; Mr. Mackevich, on the brief).
Rita K. Nadler argued the cause for respondent (Cole, Schotz, Bernstein, Meisel & Forman, attorneys; Ms. Nadler and Christine Ranieri Smith on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant husband appeals from an order denying reduction of his alimony payments. The parties were divorced on June 27, 1991. Both parties were represented by counsel at the hearing. The children are grown and thus child support is not in issue. Their Property Settlement Agreement, dated the same date as the divorce, was attached to and incorporated into the judgment. The judgment states that the trial judge "has not taken testimony as to the merits of this Agreement, but merely finds that it was entered into freely and voluntarily by the parties."
The equitable distribution and alimony provisions in the parties' agreement are unusual. With the exception of personal property to be retained by the wife, she relinquished all marital assets to the husband, including the 8,500 square foot marital home, Florida condominiums, a yacht, investment property, business partnerships, mortgage receivable and other investments, all of which were substantially encumbered.[2] The husband *239 was to be liable for all of the debts shown on his case information statement.
It is the alimony section that is here challenged. The "alimony" has many of the usual attributes of equitable distribution. The alimony is not to be taxable to the wife and is not to be deductible by the husband. Further, the alimony is payable to the wife irrespective of her remarriage or cohabitation. The alimony is payable monthly based on the annual amount of $35,000 for a fixed period (until June 1, 2001), after which on July 1, 2001 there is to be a single final alimony payment of $150,000.[3] These payments could possibly be looked upon, at least in part, as equitable distribution, except for the parties' specific reference to them as alimony, and the fact that they cease upon the death of either party.
The ordinary use of an agreement such as this is to avoid the discharge of unpaid equitable distribution in a bankruptcy proceeding. If the husband or both parties contemplated bankruptcy and the wife wanted to be sure that her right to payments and arrearages would survive a bankruptcy decree, she would try to invoke the protection of the Bankruptcy Code to collect alimony both during and after a bankruptcy proceeding. See 11 U.S.C.A. § 362(b)(2) (exempting the collection of alimony from the automatic stay provisions), and 11 U.S.C.A. § 523(a)(5) (providing for the nondischargeability of obligations to a spouse or former spouse for alimony[4]).
*240 The agreement is explicit that it is not modifiable for any reason except for the husband's physical disability. There is also a specific anti-Lepis provision:
The parties hereby waive their rights for modification based upon changed circumstances as set forth in the case of Lepis v. Lepis, 83 N.J. 139, 416 A.2d 45 (1980).
At the time of the agreement, the husband's economic fortune had taken a downturn so that the parties allegedly had a negative net worth, yet still retained title to substantial assets. As expressed to us at oral argument by the defendant's attorney, the parties' fortunes had declined from a net positive $3,000,000 to a net negative $3,000,000, expected soon to sink even further.
The husband had two sources of income: consulting fees and rental payments, the combination being clearly insufficient to pay the agreed-upon alimony. The wife argues that the parties were therefore obviously looking towards the husband renegotiating with his creditors, effecting a favorable sale of assets, later recouping assets, or at least generating substantial income. By this agreement, she claims, she gave up the potential of being supported in the future as she had been in the past, in exchange for a sure payment of $35,000 per year until 2001, when all future payments would be resolved by a lump sum payment of $150,000 (slightly more than four years' "alimony").
The husband contends that had the parties stayed together, the wife would have shared his present depressed economic status as she had formerly shared his affluence. Insofar as equitable distribution is concerned, he claims the wife gave up nothing. The alleged substantial assets were in fact liabilities, the properties have all been foreclosed, leaving nothing but debts. His income had decreased from $359,000 per year in 1986 and 1987 to just under $300,000 in 1988, under $200,000 in 1989, $54,000 in 1990 and $47,000 in 1991 (income figures rounded). To require payment of the $35,000, plus the additional alimony promised for arrearages, would require defendant to pay plaintiff more than his total income, and there are now no *241 capital assets to liquidate. He claims entitlement to relief from the agreement and judgment based upon the practical impossibility to live up to their terms. He phrases the issues in terms of the agreement being inequitable and unconscionable from its inception, and claimed an absolute entitlement to resort to Lepis modification, irrespective of the anti-Lepis clause of the agreement.
There is a conflict between two Chancery Division opinions concerning whether an anti-Lepis clause is enforceable. In Smith v. Smith, 261 N.J. Super. 198, 199-200, 618 A.2d 381 (Ch.Div. 1992), the court determined that "an `anti-Lepis' clause, which seeks to preclude the exercise of this Court's equitable responsibility to review and, if warranted, to modify support obligations in response to changed circumstances, is contrary to the public policy of this State as reflected in its Legislative Acts and its judicial decisions." 261 N.J. Super. at 199-200, 618 A.2d 381. In Finckin v. Finckin, 240 N.J. Super. 204, 206, 572 A.2d 1199 (Ch.Div. 1990), the court concluded that public policy did not prohibit the use of an anti-Lepis clause.
To some extent, we agree with both decisions. As correctly stated in Smith, the parties cannot bargain away the court's equitable jurisdiction. However, as determined in Finckin, the parties can with full knowledge of all present and reasonably foreseeable future circumstances bargain for a fixed payment or establish the criteria for payment to the dependent spouse, irrespective of circumstances that in the usual case would give rise to Lepis modifications of their agreement. Lepis established an approach that courts must take when faced with a request for modification of child support or alimony. Where the parties have agreed on the amount of support or alimony, Lepis permits later modification to the extent that changed circumstances render the agreed terms no longer "fair and equitable." 83 N.J. at 148-149, 416 A.2d 45.
Lepis thus provided broad standards for the application of a Chancery court's equitable jurisdiction to solve practical problems *242 faced by matrimonial judges when the parties have provided for the amount of support, but not necessarily where parties have established different standards by which they agreed to be guided.
This was recognized in Lepis with a different example.
If the existing support arrangement has in fact provided for the circumstances alleged as "changed," it would not ordinarily be "equitable and fair," Smith [v. Smith], 72 N.J. [350,] 360 [371 A.2d 1] [1977], to grant modification. For example, although a spouse cannot maintain the marital standard of living on the support payments received, this would not ordinarily warrant modification if it were shown that a single large cash payment made at the time of divorce was included with the express intention of meeting the rising cost of living.[6] In other cases, the equitable distribution award  which we have recognized is intimately related to support, id.  might have been devised to provide a hedge against inflation. The same might be true with respect to child support. A lump sum payment or a trust established for the benefit of the children could be shown to have been designed to cover the certain eventuality of increasing needs.
[6] Of course under the standard for modification stated in Smith, should such a provision later prove inadequate, the court is free to require greater support if it is warranted in the light of prevailing circumstances. See 72 N.J. at 360 [371 A.2d 1].
[83 N.J. at 153, 416 A.2d 45].
Here, however, rather than providing for greater needs, the parties provided for defendant's future decreased ability to pay. The usual "fair and equitable" Lepis standard is still to be applied, but as noted in footnote 6 in Lepis, quoted above, the court must determine what is warranted under the prevailing circumstances. Such circumstances include plaintiff's agreement to accept and defendant's agreement to pay a fixed amount, regardless of changes in circumstances.
Some examples may help to illustrate this principle. A wife might agree to give up half of the support to which she might have been entitled, or to accept reduced equitable distribution, in exchange for a guaranteed payment to be made, irrespective of her husband's finances or her own future good fortune. Their agreement is not based on her need or his ability to pay; they have set standards other than need and ability. If the husband accepts the benefits of this agreement, he also must *243 ordinarily accept its burdens. If the payments which he expected to equal a third of his income later equal half or even two-thirds of his income, he can no more complain than could the wife if the husband's original income had doubled so that the expected thirty percent burden was reduced to fifteen percent. If, however, these hypothetical spouses failed to include a physical disability provision (which was included in the case before us) and the husband became completely disabled with meager income, barely able to cover his uncompensated hospital costs, would a court of equity require that the income be paid to the ex-wife and the medical treatment not be rendered to the husband? Of course not. The agreed-upon support would no longer be "warranted in the light of prevailing circumstances." Lepis at 153, n. 6, 416 A.2d 45. We have used extreme examples here, but we have applied Lepis principles, without the usual need-based Lepis guidelines. Lepis recognized the parties' standards as they may be reasonably enforced. The result is that modifications are permitted, but only where the failure to modify would be unreasonable or unjust.
In the case before us, the parties did not provide that the agreement could not be modified for any reason. They merely provided that the modification provisions of Lepis would not apply. We read this provision as encompassing the usual need (and ability) standards. The usual case governed by Lepis presupposes that the parties have established an alimony payment based upon both of the parties' needs and incomes. Where there is a significant change in the net effect of these four variables, Lepis directs a change in support, if the dependent spouse is not then being supported to the standards of the marriage. In the case before us, the parties did not establish a level of support for plaintiff based upon the parties' incomes and needs. The usually-applied Lepis rules are therefore largely inapplicable.
When the parties were spending $300,000 per year, far more than $35,000 was expended by or upon plaintiff. If defendant's income increases now, so that $50,000 per year could be available *244 for alimony under the usual Lepis rules, plaintiff could try to claim such support for herself. But that was not the basis of the parties' agreement. Plaintiff is entitled only to the fixed sum until 2001. If this type of agreement is not enforceable by plaintiff, the inequity is obvious. If defendant's income increased, he could hold plaintiff to her agreement; if it decreased, he inequitably could claim an inability to pay and avoid his debt to her.
Defendant must pay the agreed amount if he has the means to do so, or these unpaid bargained-for payments will accumulate, and he only will make these payments if and when his fortunes change. If in 2001 his fortunes have not changed and he owes plaintiff over $350,000 plus interest, so be it. Defendant bargained for this result when plaintiff gave up her claim to equitable distribution and substantially higher alimony. There is no great inequity, since each party has the expected benefit and burden of the contract.
This does not, however, end our discussion. There is the very real question of enforcement. Defendant has already been jailed for nine days for failure to make payments that are impossible to make, considering his present income. While, in equity, we see no reason to relieve defendant of his unusual contractual obligation incorporated into the divorce judgment, debtors' prisons are a thing of the past. On either plaintiff's application to enforce the agreement or on defendant's application to modify his payments, the trial judge has both the power and duty to establish a reasonable level of current payment based upon defendant's income, assets, and reasonable resort to credit. N.J.S.A. 2A:34-23; see Innes v. Innes, 117 N.J. 496, 503-504, 569 A.2d 770 (1990). Defendant's failure to pay can result in his incarceration only if such failure is willful, given his then-existing means.
Of course, if defendant seeks some relief from his agreement, he must be completely candid with the court. He must fully disclose his income, assets and available sources of credit. *245 Plaintiff's income and assets are all but irrelevant, since the alimony here under review was not negotiated or agreed to on the basis of her current need.[5] As in any situation when the court determines what amount of a payor spouse's income should be made available to a payee spouse, the factors are too numerous and too individualized to be listed. That decision is committed to the sound discretion of the trial judge. We honor that discretion here.
The judge properly enforced this agreement. The only question that remains is how much defendant can now pay on account, recognizing that the unpaid balance will accrue under the present circumstances.
Defendant also challenges the award of $3,570.95 for counsel fees and disbursements awarded in an earlier enforcement proceeding, as a result of which the husband was jailed for a period of nine days. He was released when it became apparent that he had no access to the funds necessary to satisfy his obligation under the property settlement agreement. In view of the facts that plaintiff's financial condition was at least equal to defendant's, and there was apparently no bad faith on defendant's part, no counsel fee should have been awarded. N.J.S.A. 2A:34-23 (second paragraph). That aspect of the order appealed from is hereby vacated.
To recapitulate, we must give an equivocal answer to the question of whether an anti-Lepis clause is enforceable. It is both yes and no. Smith is correct when it states that the parties cannot bargain away the court's equitable powers. Lepis, 83 N.J. at 149, 416 A.2d 45. Finckin is also correct when it states that the parties can establish their own standards, and that these standards, where not unwarranted under *246 the circumstances, will be enforced by the court irrespective of the need-based guidelines of Lepis, which are applied when there are no such standards. If circumstances have made the parties' standards unreasonable, they can in extreme cases be modified. In less extreme cases, as here, the payments can be accrued with enforcement conditioned upon the payment of reasonable periodic payments. In short, the court should endeavor to carry out the agreement of the parties on a reasonable basis.
Except as to the vacation of the award of attorney's fees, the judgment appealed from is affirmed, and the matter is remanded to the Family Part for consideration of the current payments to be made by defendant.
NOTES
[1] Judge Villanueva did not participate in oral argument, but has with the consent of counsel been added to the panel deciding the matter.
[2] The couple had virtually no equity in any of these assets, since they were heavily mortgaged.
[3] There was some additional alimony to be paid to satisfy pendente lite arrearages, $12,000 in the first year, and $19,000 over the next three years, according to a schedule in the agreement.
[4] 11 U.S.C.A. § 523(a)(5)(B) denies the exemption if the liability is designated as alimony but is not "actually in the nature of alimony, maintenance or support."
[5] In the extraordinary case, the wife's needs might be relevant if, for example, there is little economic need on the part of the wife and the husband's countervailing needs warrant his being permitted to retain a higher percentage of his income. (Examples that come to mind are a sick child from a second marriage, an impending loss of his business, or the like).