**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1890-18T3

KIMBERLY DEAL,

     Plaintiff-Respondent,

v.

JOHN JAY PHILLIPS,

     Defendant-Appellant.

_____

Submitted February 25, 2020 – Decided March 5, 2020

Before Judges Fisher and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FM-03-6000-03.

Townsend, Tomaio & Newmark, LLC, attorneys for appellant (Gregory A. Pasler, on the briefs).

Kimberly Deal, respondent pro se.

PER CURIAM

In this appeal, defendant John Jay Phillips seeks our review of those portions of a post-judgment matrimonial order that denied him relief from his

child support obligation. Phillips sought to reduce that obligation based on alleged changed circumstances and his claim that the "anti-Lepis"[1] clause in the parties' property settlement agreement should not be enforced. We find no merit in Phillips' arguments and affirm.

The parties were married in 1997 and divorced in 2004. Their two children, born in 1998 and 2000, are now enrolled in college, the oldest at a college in North Carolina and the youngest at a college in Delaware. The judgment of divorce incorporated a property settlement agreement (PSA), which fixed the amount of child support without regard for the child support guidelines. The 2004 PSA also contains an anti-Lepis clause. Around the time he signed the PSA, Phillips pleaded guilty in federal district court to committing wire fraud, for which he served approximately three years in a federal penitentiary.

Notwithstanding his agreement to a fixed child support schedule and to not seek a modification of his child support obligation on changed circumstances grounds, Phillips has repeatedly sought relief from his child support obligation and has already challenged the enforceability of the PSA. For example, in 2008, after being released into a federal halfway house, Phillips moved for relief from

---

[1] Referring to Lepis v. Lepis, 83 N.J. 139, 153 (1980), which held that a party may seek modification of a support obligation by showing changed circumstances that demonstrate an inequity in the existing obligation.

A-1890-18T3

the PSA, claiming it was unconscionable by relying on Morris v. Morris, 263 N.J. Super. 237 (App. Div. 1993). In ruling on that application, as well as the application for a reduction in child support, the judge then presiding over the matter noted that defendant already had "a history of nonpayment" followed by "large lump sum payments soon after a threat of arrest." Despite that history, the judge found, as memorialized in the July 3, 2008 order, that it was appropriate to leave unaltered the child support amount but that, temporarily, Phillips would only be required to pay one-third of it, with the remainder left to simply accrue.

Since then, Phillips has repeatedly moved for relief from the child support obligation and the PSA. The record on appeal alone reveals that trial judges have ruled on such motions and cross-motions on numerous occasions; the record before us includes orders impacting child support entered on June 16, 2014, January 22, 2016, November 27, 2017, March 2, 2018, and June 4, 2018, as well as the December 3, 2018 order now under review. And, once Phillips filed this appeal, orders were entered on March 1 and 4, 2019, in response to plaintiff Kimberly Deal's motion to enforce the child support obligation; the motion was denied in the first of these two orders, because the judge mistakenly

A-1890-18T3

determined that no relief could be granted while the matter was on appeal.[2]  By way of the March 4, 2019 order, the judge granted, with the parties' consent, Deal's request that Phillips be compelled to pay the temporary $1000 per month previously ordered.  An arrearage well in excess of $500,000 has accrued as a result of these orders and temporary reprieves from full compliance.

In his appeal, Phillips argues:

> I. THE TRIAL COURT ABUSED ITS DISCRETION BY MAKING UNREASONABLE FINDINGS OF FACT INCONSISTENT WITH THE EVIDENCE BY FAILING TO MODIFY DEFENDANT'S CHILD SUPPORT OBLIGATION DUE TO A CHANGE OF CIRCUMSTANCES.
>
> II. THE TRIAL COURT'S FAILURE TO ORDER DISCOVERY, CONDUCT A PLENARY HEARING AND MODIFY DEFENDANT'S CHILD SUPPORT OBLIGATION PURSUANT TO JACOBY V. JACOBY[3] WAS REVERSIBLE ERROR.
>
> III. THE TRIAL COURT'S FAILURE TO VACATE THE "ANTI-LEPIS" CLAUSE IN THE PARTIES' PROPERTY SETTLEMENT AGREEMENT WAS

---

[2]  In the absence of a stay, trial courts remain free to enforce their orders notwithstanding the pendency of an appeal.  See R. 2:9-1(a) (recognizing that, despite the appellate court's "supervision and control" of the proceedings once an appeal is filed, the trial court "shall have continuing jurisdiction to enforce judgments and orders").

[3]  Jacoby v. Jacoby, 427 N.J. Super. 109 (App. Div. 2012) (holding that a child's residing on campus may be a change in circumstances warranting review and modification of a child support order).

A-1890-18T3

REVERSIBLE ERROR AS CIRCUMSTANCES HAVE MADE THE PARTIES' STANDARDS UNREASONABLE.

IV. THE TRIAL COURT'S FAILURE TO PROVIDE DEFENDANT A CREDIT FOR PRIVATE SCHOOL TUITION PAID FOR THE 2008-2009 YEAR AND FROM JUNE 16, 2014 TO THE PRESENT RUNS COUNTER TO ITS JUNE 16, 2014 ORDER AND MUST BE REVERSED.

V. THE TRIAL COURT ERRED BY SCHEDULING AND CONDUCTING ORAL ARGUMENT ON DEFENDANT'S MOTION AS PLAINTIFF FILED NO WRITTEN OPPOSITION.

We find insufficient merit in these arguments to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only a few comments that focus on Phillips' first and third arguments.

Putting aside – for the moment – the past history of Phillips' attempts to seek relief from the child support obligation, his arguments that the child support amount should be modified because of his financial circumstances or because the children are now enrolled in out-of-state colleges are dependent on his efforts to undo the PSA's anti-Lepis clause. In Morris, 263 N.J. Super. at 241, we noted the conflict between two published trial court decisions: Finckin v. Finckin, 240 N.J. Super. 204 (Ch. Div. 1990), and Smith v. Smith, 261 N.J. Super. 198 (Ch. Div. 1992). In the former, Judge Krafte found that because a

5

property settlement agreement, which contained an anti-Lepis clause, was shown to constitute a fair and equitable exchange of promises – fully explained to the parties, who were represented by competent counsel – no public policy barred its enforcement. Finckin, 240 N.J. Super. at 205-06. In the latter, Judge Wolfson disagreed with Finckin, finding that a property settlement agreement, which contains an anti-Lepis clause, that precluded the exercise of a court's equitable jurisdiction to review and modify a support obligation in light of changed circumstances was contrary to public policy. Smith, 261 N.J. Super. at 199-202.

When asked to reconcile the disagreement, we held in Morris that "[t]o some extent, we agree with both decisions." 263 N.J. Super. at 241. We agreed with Smith that "the parties cannot bargain away the court's equitable jurisdiction," but we also agreed with Finckin that "parties can with full knowledge of all present and reasonably foreseeable future circumstances bargain for a fixed payment or establish the criteria for [the] payment . . . irrespective of circumstances that in the usual case would give rise to Lepis modifications of their agreement." Ibid.

As the record on appeal reveals, the parties entered into the PSA in anticipation of Phillips' incarceration. The child support amount was clearly

delineated, and the PSA called for gradual increases until the amount topped out at $5000 per month, with later increases based only on cost of living standards. The parties expressly declared that they had chosen not to have the child support guidelines apply to the obligation. They both waived alimony and any consideration of their "extremely high standard of living." They also expressly "t[ook] into consideration" – in agreeing upon the fixed amount of child support – that they disputed the amount of their respective incomes and stipulated to imputed amounts. And, in fixing child support, the parties took into consideration "all foreseeable and unforeseeable other events," including: Phillips' remarriage; his other child; all future children Phillips might have; his incarceration; changes in both their incomes whether or not constituting a substantial increase or decrease; and loss or lack of employment. As we held in Morris, such an agreement is not against public policy and may be enforced; by the same token, the trial court retained its equitable powers in considering its enforcement.

In his 2008 motion, Phillips argued that the PSA was unenforceable because he was under undue influence and stress, because he did not voluntarily agree, and because it was unconscionable on its face. The judge who ruled on the motion also noted that Phillips argued that: he claimed to have pleaded

7

guilty to wire fraud "one day before" he signed the PSA; Deal "tipped off" someone Phillips was recording, thereby prevented him from providing the government with information, leading to his receiving a three-year instead of a six- to twelve-month sentence; he was "not of sound mind at the time of the PSA because he ha[d] just entered his [guilty] plea and was exhausted and destitute"; he "ha[d] a psychological disorder, Cyclothymic Disorder, which made his thinking process unclear when he signed the PSA"; and he "was threatened with the possibility of arrest if he did not sign the PSA." Of particular relevance here, Phillips then also argued:

> that the PSA itself is unconscionable on its face [because it] contains a clause in which he waived his right to seek modification of the PSA under Lepis v. Lepis. [Phillips] states that he would never have signed away that right if he were in his right mind.

In disposing of the motion and cross-motion, the judge then relied on Morris in concluding that the PSA was not unconscionable and that the anti-Lepis provision was duly bargained for. Having unsuccessfully argued in 2008 that the PSA was unenforceable because of the anti-Lepis provision or otherwise, it is too late for Phillips to again argue the PSA is unenforceable.[4]

---

[4] As we held in Morris, an anti-Lepis provision does not deprive the court of its power to provide equitable relief. The long history of Phillips' post-judgment

A-1890-18T3

In short, we have been presented with no principled reason to question the validity of the parties' anti-Lepis provision. Phillips raised that argument long ago, received a ruling on its merits, and apparently chose not to then seek appellate review. Moreover, based on the allegations in the motion that led to the order now under review, there is no reason to question the fairness of that provision or its impact on the child support obligation.

Our rejection of Phillips' anti-Lepis argument renders irrelevant Phillips' argument that his present income level and financial condition warrants a reduction in child support. Even if that were not so, we note that Phillips appeals only the December 3, 2018 order that denied various aspects of his multi-faceted motion, including that part of the motion that sought a reduction based on changed circumstances. Even though the record does not reveal the exact date Phillips' trial court motion was filed, we will assume for present purposes that it was filed on the date contained on the motion's signature page, July 28, 2018. Since the temporary obligation permitted for a while ($1000 per month) ended and the amount called for by the PSA ($5077 per month) was reinstated by the

---

attempts to gain relief demonstrate the trial court has repeatedly provided temporary relief from the child support obligation, at times requiring that to avoid enforcement Phillips would only be required to pay child support in amounts less than twenty percent of the level required by the PSA.

order entered on November 27, 2017, the question posed by the July 2018 motion – even assuming changed circumstances are a basis for modifying this child support obligation – would only focus on any change in circumstances between November 27, 2017, and the filing of the motion at the end of July 2018. Instead of focusing on that narrow time period, Phillips presented only general allegations about his financial condition over the prior eight or so years. Those allegations show only his contention that his financial condition has remained largely unchanged since his release from federal imprisonment.

As we have already held, these considerations are irrelevant to what Deal is entitled to by way of the PSA because of the anti-Lepis provision. But, even without that provision, Phillips failed to show a substantial change in circumstances since the November 2017 order that reinstated the child support required by the PSA.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION