**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2131-15T2

PHILIP J. WISOFF,

    Plaintiff-Appellant,

v.

BARBARA WISOFF,

    Defendant-Respondent.

_____

        Argued May 9, 2017 — Decided August 29, 2017

        Before Judges Espinosa and Grall.

        On appeal from the Superior Court of New
        Jersey, Chancery Division, Family Part,
        Union County, Docket No. FM-20-1693-03.

        Tanya N. Helfand argued the cause for
        appellant (Helfand & Associates, attorneys;
        Ms. Helfand, of counsel and on the briefs).

        Anastasia Latsos argued the cause for
        respondent (Weinstein Lindemann & Weinstein,
        attorneys; Jeffrey P. Weinstein, of counsel
        and on the brief; Ms. Latsos, on the brief).

PER CURIAM

    Plaintiff Philip J. Wisoff appeals the denial of a post-
judgment motion seeking modification of his alimony and child
support obligations.  We reverse and remand for further

proceedings in conformity with Lepis v. Lepis, 83 N.J. 139 (1980) and Morris v. Morris, 263 N.J. Super. 237 (App. Div. 1993).

## I.

The Wisoffs married in August 1979.  Both were graduates of Brown University, and plaintiff had a master's of science degree in computer engineering from Stanford University.  Defendant had studied "studio design" at Brown.  The Wisoffs have two children, one born in 1986 and the other in 1989.

Starting in 1986 and throughout the remainder of the marriage, defendant focused on child-rearing and the home.  She also had medical issues to address.  She had spinal surgery in 2000 but at maximal medical benefit in 2002 had difficulty standing or sitting for prolonged periods that was not expected to improve; she was, however, otherwise able to "participate in the majority of activities of daily living."

Throughout the marriage, plaintiff worked in his field. For many years he was the information technology executive for well-known professional firms in New York City.  In 2001, he earned $309,881, which included salary and bonus.

The Wisoffs divorced in June 2003, after twenty-four years of marriage.  Plaintiff was forty-eight years old, defendant forty-six and their children seventeen and fourteen.  The

Wisoffs resolved all ancillary issues — parenting, child support, alimony and equitable distribution — with a comprehensive and detailed property settlement agreement (PSA). They negotiated the PSA, each assisted by an experienced attorney specializing in matrimonial law.[1]

Plaintiff assumed significant support obligations in the PSA. He agreed to pay defendant $3500 child support monthly, $1750 per child, and to maintain the children's medical insurance equivalent to the coverage they had prior to the divorce. He also agreed to pay for their education through college and professional school, a contribution broadly defined to include related expenses. The PSA provides for a reduction of cash support to $437.50 monthly on each child's eighteenth birthday and until the child's twenty-second birthday. With each reduction to $437.50, plaintiff agreed to assume defendant's responsibility for the child's expenses she paid prior to the reduction.

The PSA addressed emancipation, which the Wisoffs agreed to delay beyond a child's twenty-third birthday if "injury, illness or disability of the child" precluded such independence.

_____

[1] The Wisoffs were and are represented by different attorneys in this post-judgment matter in the trial court and on appeal.

Plaintiff's base alimony obligation under the PSA was $8050 monthly alimony _plus_ defendant's quarterly estimated tax due on that alimony.[2] Paragraph 16 of the PSA explains the alimony amount was "agreed to and established with respect to support at a standard of living commensurate with the social status, wealth and income of the parties during the marriage." That is the standard under Crews v. Crews, 164 N.J. 11 (2000).

Paragraphs 11, 12 and 13 of the PSA delineate circumstances warranting upward and downward modifications of alimony. Defendant's loss of COBRA benefits required a $400 monthly upward modification, paragraph 11. Defendant's earning income from work or profit from business requires a downward modification of alimony and provides a formula for that adjustment, paragraph 12. Increases in the cost of living require annual upward modification in conformity with the Consumer Price Index (CPI), unless plaintiff's "annual earned income increase percentage is less than the CPI," in which case defendant "receive[s] the lesser of the CPI or [plaintiff's]

---

[2] In pertinent part paragraph 9 provides:

> The Husband shall pay to the wife, as alimony, the sum of $8,050.00 per month . . . . The Husband shall also pay to the wife . . . the taxes due on her alimony . . . .

raise," paragraph 13. Paragraph 14 addresses termination of alimony.

Paragraph 15 precludes modifications not expressly provided as follows:

> [Plaintiff's] aforementioned obligation to pay alimony to the [defendant] shall be non-modifiable, <u>except as set forth herein</u>, regardless of any future changes in circumstances, whether foreseen or unforeseen, including, but not limited to, the following:
>
> (a) the subsequent acquisition (by inheritance, gift or otherwise) or loss of assets by either of them;
>
> (b) the dissipation (whether negligent or not) of the assets received by each of them as and for equitable distribution in this matter;
>
> (c) substantial changes in either party's physical or mental health;
>
> (d) change in the Federal and/or State income tax laws[.]
>
> [(Emphasis added).]

Plaintiff's earnings increased following divorce. A March 2007 consent order reflects $490,000 earned income in 2006, a compromise accounting for overlapping severance pay and salary

he received when he changed jobs. That compromise was one of several the Wisoffs addressed in the consent order.[3]

The Wisoffs' first-born was twenty-one years of age in 2007 and was living with defendant. Under the PSA defendant would have received $437.50 monthly support for that child, but plaintiff agreed to pay $875 monthly effective January 1, 2007 unless the child attended college and lived elsewhere.

Defendant was dealing with multiple spinal cysts in 2007 and had surgery to remove them in 2008. Plaintiff agreed to double his $400 monthly contribution to her health care costs and to a $346 monthly cost of living adjustment.

Implicitly acknowledging the 2007 deviations from the PSA's anti-modification provision, the consent order provides: "In furtherance of [p]aragraphs 15, 16 and 17 of the PSA, the defendant agrees that the plaintiff shall have no further obligation to contribute to any additional amounts to [her] health" care expense not "set forth in" the consent order. With the 2007 adjustments, plaintiff's monthly alimony obligation was

_____

[3] Plaintiff's appendices include three copies of what he purports to be the March 2007 consent order plaintiff signed on March 27 and defendant signed on March 28. They are found at pages 58 through 65 of his appendix and pages 57 to 64 and 873 to 879 of his supplemental appendix. The purported orders differ, and neither party addresses the obvious problem. The trial court should address it on remand. None of the copies show the judge whose signature appears on the final page filed the original.

A-2131-15T2

$9636, but only until December 31, 2007, when the next cost of living adjustment would take effect.

In the same consent order, the Wisoffs agreed to recalculate alimony on plaintiff's retirement at age 65 or later and provided a formula for computing the post-retirement amount. Their formula excludes income or assets derived "from assets equitably distributed to each under the PSA" and recognizes that plaintiff had "$620,000" of excludable assets "as of February 28, 2007." The Wisoffs also agreed to exclude income and assets of plaintiff's second wife.

Five years later in May 2012, defendant moved to enforce plaintiff's child support obligation. In response, plaintiff filed a cross-motion to emancipate the Wisoffs' children, who were then twenty-six and twenty-three years old. Disabling illness, requiring a series of hospitalizations and recovery, had delayed the first-born's education and independence. The Wisoffs agreed to arbitrate those disputes.

As explained in the arbitrator's written decision in June 2014, the Wisoffs partially resolved the issues in the May 2012 motions, and filed a second round of motions to resolve the others. A three-day hearing on emancipation and arrears commenced on March 14, 2014. The arbitrator emancipated the Wisoffs' second-born, but applying the provision of the PSA

delaying emancipation due to a child's illness or disability, the arbitrator denied emancipation of the first-born and directed plaintiff to provide the support required by the PSA.[4]

Plaintiff lost his job before the arbitration hearing. His last employer severed the relationship in mid-July 2013. Starting in August, plaintiff received seven months' pay equivalent to his former salary over a six-month period — through January 2014 — a total of $262,500, $37,500 monthly.

After plaintiff's termination in July 2013, the trajectory of his career reversed. In the past, plaintiff had easily moved from job to job. Although plaintiff immediately commenced efforts to find a new job with comparable pay,[5] he had not found one when he filed the motion to modify his support obligation in September 2015 or when the judge denied that motion in December 2015.

While continuing to look for employment in August 2013, plaintiff also started his own consulting business, MTC

---

[4] The arbitrator also fixed child support arrears plaintiff owed for both children, but that determination is irrelevant to the issues raised on this appeal.

[5] Plaintiff submitted documentation of his efforts in a 556 page exhibit, Exhibit I, to his certification in support of the 2015 motion. The table of contents entry is singular and general, "Employment Attempts." Cf. R. 2:6-1(c) (requiring identification of the initial page of each document, exhibit or other paper included).

Services, LLC. In addition, plaintiff joined the Cutter Consortium as "a senior consultant," but he reported no earnings from that association in 2014.

In the trial court and on appeal, defendant submits that plaintiff's job search was neither diligent nor sincere. She contends he was "offered" and rejected a job with a salary of $250,000 in 2013. But plaintiff asserted the job was not offered and notes it would have required relocation to Washington, D.C. A series of e-mails plaintiff exchanged with a recruiter in October 2013 discuss a job with that salary in the Washington area. The "offer" was an expression of interest in plaintiff and the proposed salary was lower than plaintiff's seven months' severance pay. He advised the recruiter he was passing "on the opportunity" but asked if the company was interested in an "interim CIO," which he would consider. The recruiter explained that he had already suggested such an arrangement and the company was not interested.

Plaintiff's earnings in 2014 were minimal. His August 20, 2015 Case Information Statement (CIS) and his 2014 tax return, reflect $72,931 net profit from MTC and earned income of

$43,750, the severance paid by his last employer in 2014.[6]  As for 2015, the CIS reports average gross weekly earnings of $1554 from MTC, about $81,000 annually.  He certified he hoped to earn $75,000 from MTC in 2015.

In 2014, plaintiff's support payments were about $100,000 more than his earned income.  He paid $157,778 alimony[7] and about $20,400 child support and met those support obligations by taking IRA distributions amounting to $160,900.  As a consequence, he paid State and Federal taxes totaling $16,668, including a $3164 penalty for distributions taken before he reached the age of 59.5 years.  According to plaintiff, he had no other way to meet his obligations and would have nothing left for retirement if the obligations were not reduced.

## II.

### A.

For reasons stated in a letter opinion of December 14, 2015, the judge declined to order discovery, denied modification

---

[6] The 2014 tax return appended to the CIS is a joint return that includes business income earned by plaintiff's second wife.  The Schedule C for MTC indicates gross earnings of $37,956 and net profit of $29,181, there is no W-2 included with the 2014 return of appeal that documents the reported severance pay.  A letter from the tax preparer explains it.

[7] Reported on the 2014 tax return.

of child support and alimony and awarded defendant a $2000 counsel fee. As to child support, the judge concluded the parties were "bound by the Order of Arbitration entered in June of 2014, and should be precluded from relitigating the same issue absent an additional change in circumstances." As to alimony, the judge enforced the "anti-Lepis" provision of the Wisoffs' PSA and concluded this case was not sufficiently "extreme" to warrant modification despite the "anti-Lepis" clause. See Morris, supra, 237 N.J. Super. 237.

## B.

Courts have statutory authority to modify post-divorce support "as circumstances may require," N.J.S.A. 2A:34-23, and equitable authority to modify such obligations "in response to changed circumstances [that] cannot be restricted," Lepis, supra, 83 N.J. at 149. "The proper criteria are whether the change in circumstance is continuing and whether the agreement or decree has made explicit provision for the change." Id. at 152. Where an "existing support arrangement has in fact provided for the circumstances alleged as 'changed,' it [is] not

ordinarily . . . 'equitable and fair,' to grant modification."

Id. at 153 (quoting Smith v. Smith, 72 N.J. 350, 360 (1980)).[8]

Changes in circumstance warranting modification include increases or decreases in income or need, including need attributable to illness or disability and changes in tax law. Id. at 150-53. The change must substantially affect need or ability to provide support and cannot be speculative or temporary. See id. at 151-53; cf. N.J.S.A. 2A:34-23(j) (providing for modification or termination of alimony based on "prospective or actual retirement") and (k)(10) (precluding an application based on job loss "until a party has been unemployed, or has not been able to return to or attain employment at prior income levels, or both, for a period of 90 days").[9]

---

[8] In this case there are no allegations of "unconscionability, fraud, or overreaching in negotiations of the settlement," that would provide a basis for invalidation or modification of a PSA. J.B. v. W.B., 215 N.J. 305, 326 (2013) (quoting Miller v. Miller, 160 N.J. 408, 419 (1999)).

[9] The subsections of N.J.S.A. 2A:34-23 cited above were amended by L. 2014, c. 42 adopted on September 10, 2014 to take effect "immediately" but are not to be "construed . . . to modify specifically bargained for contractual provisions that have been incorporated" into a judgment of divorce. They are cited here to illustrate the Legislature's recognition of impropriety of immediate modification and recognition of the importance of leaving prior agreements providing solutions addressing a specific changes of circumstance.

On a prima facie showing of a decrease in income leaving a supporting spouse unable to meet his or her own needs and support obligations, discovery is warranted. Id. at 157. Without such discovery, a "court will be unable to make an informed determination as to 'what, in light of all the [circumstances] is equitable and fair.'" Id. at 158 (alteration in original) (quoting Smith, supra, 72 N.J. at 360).

Following discovery, Lepis requires the judge to determine whether there is a genuine dispute of material fact requiring a hearing or whether modification can be resolved on undisputed documentary evidence and facts stated in certifications. Id. at 158-59 (citing among others Hallberg v. Hallberg, 113 N.J. Super. 205, 208 (1971) (a case involving alimony and child support)).

Because the Wisoffs' PSA limits modification of alimony but not child support, we address child support in subsection C and alimony in subsection D.

C.

Plaintiff contends the judge erred in denying modification of child support on the ground the arbitrator found the child support amount appropriate in June 2014 and circumstances had not changed since. We agree.

The arbitrator did not address the amount of child support because that issue was not raised. The initial motions were filed in May 2012, more than a year before plaintiff lost his job. Had plaintiff moved to expand the scope of arbitration to reduce the amount of child support when he lost his job in July 2013, the application would have properly been denied as premature and based on a temporary change not warranting modification. Lepis, supra, 83 N.J. at 146, 151-54. Plaintiff, after all, had a history of successful transition from job to job, was looking for employment and continued to receive severance pay equivalent to his final salary through January 2014. The hearing commenced in mid-March of that year.

To the extent the judge's letter opinion can be understood to suggest collateral estoppel, application of that doctrine would not equitable. See Kozlowski v. Smith, 193 N.J. Super. 672, 675 (App. Div. 1984). Accordingly, we reverse and remand for further proceedings on child support in conformity with Lepis. The arguments defendant presents in favor of affirmance have insufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

D.

In denying modification of alimony without discovery, the judge relied upon paragraph 15 of the PSA, which broadly

prohibits any modification not specifically authorized in the PSA. The judge also followed decisional law favoring enforcement of settlement agreements, especially in matrimonial cases, precedents too well-settled to require explication here. See J.B., supra, 215 N.J. at 326 (and cases cited therein).

"Courts recognize the contractual nature of [PSAs]. Pacifico v. Pacifico, 190 N.J. 258, 265 (2007). As contracts, PSAs should be enforced according to the original intent of the parties. Id. at 266." J.B., supra, 215 N.J. at 326. In discerning the parties' intent, "[c]ontracts should be read 'as a whole in a fair and common sense manner.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014) (quoting Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009)).

Plaintiff urges reversal on the ground that the judge relied on selective provisions of the PSA and ignored others. This objection is well-taken.

Paragraph 12 provides a formula for downward modification of alimony in the event of defendant's return to work or starting of a business. Similarly, paragraph 13 provides for a modification of alimony based on increases in the CPI. Read together, paragraphs 12 and 13 further the purpose of the alimony amount the Wisoffs agreed was proper — as paragraph 16 explains, an amount that provides "support at a standard of

15

living commensurate with the social status, wealth and income of the parties during the marriage." Income defendant earns decreases her need for alimony to support that marital lifestyle and, therefore, warrants modification. Similarly, CPI adjusted increases address need created by inflation. Lepis, supra, 83 N.J. at 153.

Plaintiff presented evidence implicating paragraph 12 that the judge did not consider. We refer to the home page of "Barbara Wisoff Designs." That home page provides reason to believe defendant owned and started a design business in 2010 and was still operating that business when plaintiff accessed the home page in 2015. Other than a bald denial, defendant presented nothing to rebut the reasonable inference of profit from business. That evidence was sufficient to warrant discovery pertinent to reduction of plaintiff's alimony obligation as contemplated by paragraph 12.

Because the judge should have directed discovery in conformity with Lepis on that basis, a remand for that purpose is required.

We have considered plaintiff's objections to the PSA contending the so called anti-Lepis clause lacked consideration and that language in the PSA and March 2007 consent order addresses tax consequences of alimony payments that warrant

16                                    A-2131-15T2

modification in light of additional tax he incurs in acquiring the funds to make alimony payments. Those arguments have insufficient merit to warrant discussion in this opinion beyond the brief comments that follow. R. 2:11-3(e)(1)(E).

As to lack of consideration for plaintiff's agreement to forego modification based on a decline in his income, it suffices to note this is a complex and carefully crafted PSA with many trade-offs. Paragraph 16 effectively forecloses modification based on Crews and increases in plaintiff's income. Paragraph 13's formula for CPI adjustments provides further protection in the form of certainty against Lepis applications based on inflation. Moreover, paragraph 12, requiring a reduction of alimony by a pre-ordained formula based on defendant's earnings, can be viewed as another trade-off. In hindsight plaintiff may view the trade-offs as a poor deal, but courts are not free to rewrite PSAs on that basis. See J.B., supra, 215 N.J. at 326.

As to tax consequences, the provisions of the PSA and March 2007 consent order plaintiff relies upon address tax deductions for the alimony payments plaintiff makes. They do not address tax consequences related to tax on earned or unearned income plaintiff utilizes to pay alimony.

In contrast, plaintiff's claim that the judge's reliance on Morris was misplaced warrants discussion. The alimony amount the parties agreed to in Morris was not established "based upon the parties' incomes and needs" and, therefore, was unrelated to Lepis modifications. 263 N.J. Super. at 243. The specific arrangement at issue here, paragraph 15 of the PSA's expressly limiting Lepis modifications, is plainly related to those Lepis standards of need and ability to pay.

Morris provides pertinent guidance, nevertheless. In Morris, Judge Drier considered the direction the Court provided in Lepis when it stated it would "not ordinarily be 'equitable and fair' to grant modification" where the existing support arrangement addressed the circumstance in question. Lepis, supra, 83 N.J. at 153(emphasis added); Morris, supra, 253 N.J. Super. at 242. Judge Drier quoted an illustration provided in Lepis as an example of a specific arrangement addressing a changed circumstance — "a single large cash payment made at the time of divorce was included with the express intention of meeting the rising cost of living." Morris, supra, 263 N.J. Super. at 242 (quoting Lepis, supra, 83 N.J. at 153). Judge Drier focused on a footnote accompanying that illustration in Lepis, supra, 83 N.J. at 153 n.6, which explained that if the cash payment in its illustration later proved inadequate "in

light of prevailing circumstances," a court would be "free to require greater support." Morris, supra, 263 N.J. Super. at 242-43. Considering the explanatory footnote, the court in Morris reasoned that the Supreme Court approved recognition of "the parties' standards as they may be reasonably enforced" in "prevailing circumstances" and concluded Lepis allows modifications of specific arrangements "only where the failure to modify would be unreasonable or unjust" in "prevailing circumstances." Id. at 243.

In Morris, the court identified the pertinent prevailing circumstances and included "plaintiff's agreement to accept and defendant's agreement to pay a fixed amount, regardless of change in circumstances." Id. at 242. And the court found no reason in equity to relieve the supporting spouse of his agreement in the prevailing circumstances which included an alimony amount unrelated to need and capacity to pay. Id. at 244. Nevertheless, in light of the impracticality of enforcing an obligation the husband could not meet at the time, demonstrated by the fact that he had already been detained for non-payment, the Morris court provided a remedy in the form of delayed payment and accrual of a debt to be satisfied at a later date.

19

That guidance is pertinent to this case, and the judge should consider it on remand. Here, the "prevailing circumstances" include not only paragraph 15 and the related paragraphs of the Wisoffs' PSA but also the parties' deviation from the PSA in their 2007 consent order. Specifically, the Wisoffs agreed to increase alimony by doubling plaintiff's monthly contribution for defendant's health expenses in the face of her enhanced need and to provide child support above the level required by the PSA to more equitably address their first-born's unanticipated needs.

While not yet tested by discovery and cross-examination at this point, the "prevailing circumstances" also include the fact that application of the CPI has left defendant with the continued benefit of alimony based on plaintiff's income from plaintiff's post-divorce work and plaintiff with a need to withdraw his share of retirement savings earned during the marriage and distributed at the time of divorce in order to meet his alimony obligation.

To the extent defendant argues that she gave up a right to share in plaintiff's post-judgment income to which she was entitled, she is mistaken. Because alimony was established to provide defendant support at the marital standard and was adjusted with the cost of living to address inflation, she was

20

not entitled to more.  Crews, supra, 164 N.J. at 29 (noting that a dependent former spouse may not use motion to modify alimony "to share in the post-divorce good fortune of the supporting spouse"); see N.J.S.A. 2A:34-23(b)(4) (stressing that "neither party [has] a greater entitlement to that standard of living than the other"); Crews, 164 N.J. at 31-32 (noting the relevance of the marital standard of living and other factors used in setting the initial alimony where modification is at issue).

Matters such as consideration of "prevailing circumstances" are committed to the sound discretion of the trial court. Morris, supra, 263 N.J. Super. at 245.  As in Morris, we defer to that discretion and advise the judge to reconsider the relevance of Morris on remand following discovery. We also vacate the award of counsel fees which the judge should reconsider because its propriety must abide the outcome on remand.  Because fees for appellate service also must abide the trial court's determinations on remand, we anticipatorily refer any such application to the trial court for disposition.  R. 2:11-4.

Reversed and remanded for further proceedings in conformity with Lepis and Morris.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2131-15T2