**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5450-16T4

D.V.,

     Plaintiff-Appellant,

v.

S.J.S.,

     Defendant-Respondent.

_____

     Argued October 30, 2018 – Decided December 11, 2018

     Before Judges Rothstadt and Gilson.

     On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Hunterdon County, Docket No. FM-10-0239-12.

     Bonnie C. Frost argued the cause for appellant (Einhorn, Harris, Ascher, Barbarito & Frost, PC, attorneys; Matheu D. Nunn, of counsel and on the brief; Bonnie C. Frost and Jessie M. Mills, on the brief).

     Betsy W. Bresnick argued the cause for respondent (Skoloff & Wolfe, PC, attorneys; Betsy W. Bresnick, of counsel and on the brief; Jeb Harmon, on the brief).

PER CURIAM

In this post-divorce-judgment matter, plaintiff, the former wife, appeals from a June 30, 2017 order terminating the alimony obligation of defendant, the former husband.[1] Plaintiff also appeals from a provision of the order directing the parties to pay certain of their son's future food and gasoline expenses from his college account. We affirm. The order on appeal was entered following a plenary hearing and the factual findings made by the Family judge are supported by substantial, credible evidence. Moreover, we discern no error in the judge's legal conclusions.

I

The parties were married in 1993, and they have two children: a son born in August 1997, and a daughter born in February 2001. Plaintiff filed for divorce in October 2011. Following a contentious litigation, a final judgment of divorce (JOD) was entered in March 2014.

The JOD incorporated a property settlement agreement (PSA) and a consent judgment addressing custody and parenting time. In the PSA, the parties agreed that defendant would pay plaintiff alimony in the amount of $25,000 per

---

[1] Given the issues raised on this appeal, it is necessary to discuss some of the parties' financial circumstances. Accordingly, we use initials and refer to the parties as plaintiff and defendant to protect their privacy interests.

A-5450-16T4

year. The PSA also stated: "Alimony has been calculated using an imputed income of $125,000 for the Husband and an imputed income of $40,000 for the Wife."

Defendant is a professional recruiter. He is self-employed and he operates two recruiting businesses, which have no employees other than defendant. Plaintiff is a trained certified public accountant, but she has allowed her license to lapse. She worked for AT&T and then Lucent until 2006. For several years thereafter, she stayed at home caring for the parties' children. Following the divorce, plaintiff obtained employment at Pfizer as a financial manager.

In February 2016, defendant filed a motion to reduce or terminate his alimony obligation. Plaintiff cross-moved contending that defendant was in violation of litigant's rights concerning the son's college account. A Family Part judge, Judge Julie M. Marino, conducted a seven-day plenary hearing to address those issues. At the hearing, both parties testified and each party called an expert to testify about the income defendant earned.

On June 30, 2017, Judge Marino issued a written opinion and order terminating defendant's alimony obligation retroactive to the date of the filing of his motion. Judge Marino also granted, in part, plaintiff's cross-motion. In that regard, the judge compelled defendant to repay $2538 to the son's college

account, but also directed that future expenses for food and gasoline, which the son incurred in attending college, would be paid from the son's college account.

At the plenary hearing, defendant contended that the recruiting business had changed dramatically and he was earning substantially less than $125,000 per year. He also pointed out that plaintiff had obtained employment and she was earning more than he was earning. In opposition, plaintiff argued that defendant earned substantially more income than he reported on his tax returns. She also asserted that alimony should not be modified because she had agreed to impute income so that she could rely on defendant paying her $25,000 per year in alimony on a permanent basis.

In her written opinion, Judge Marino made detailed findings of fact. In that regard, the judge found that (1) during their marriage, the parties had a lifestyle where they spent approximately $13,000 per month; (2) the parties had used both income and assets to support that marital lifestyle; (3) the parties' tax returns accurately reflected their income; (4) plaintiff presented "no credible evidence" that defendant had income in excess of what was reported on his tax returns; (5) defendant's net income in 2014, 2015, and 2016 was $114,621, $81,060, and $69,606; (6) defendant's "income has been reduced to $70,000 and that is a permanent change of circumstances"; (7) plaintiff obtained employment

A-5450-16T4

after the divorce, her current income is $129,000, inclusive of bonus, which is "$90,000 higher than what was imputed to her for the purpose of calculating alimony," and is "in excess of $48,000 higher than defendant's 2016 income"; (8) plaintiff did not waive her right to equitable distribution in favor of permanent alimony; (9) plaintiff's net worth increased by just over $75,000 since the divorce, and her current net worth was just over $997,000; and (10) defendant's net worth decreased by just over $65,000 since the divorce, and his current net worth was just over $831,000.

Judge Marino also made credibility findings. She found plaintiff incredible in terms of plaintiff's testimony concerning the parties' marital lifestyle and the parties' joint tax returns. Specifically, she found that the marital lifestyle was substantially less than testified to by plaintiff. She also found that plaintiff was aware of what the parties were reporting on their joint tax returns while they were married and those tax returns accurately reflected their income.

Applying the factual and credibility findings she had made, Judge Marino held that defendant had shown that his income had substantially and permanently declined since the divorce. The judge also examined the parties' PSA and concluded that the use of imputed income for purposes of calculating alimony did not establish a "floor" for all future calculations of alimony.

Accordingly, the judge terminated defendant's alimony obligation effective February 9, 2016, which was the date he filed his motion.

II

On appeal, plaintiff makes five primary arguments: (1) the trial court erred in interpreting the PSA and in rejecting the argument that defendant's imputed income was a permanent floor for the purpose of calculating alimony; (2) defendant failed to demonstrate a change of circumstances that impaired his ability to support himself; (3) the trial court's findings concerning defendant's income failed to account for his self-employment status and did not consider his earning capacity; (4) the trial court's findings of fact were not supported by substantial, credible evidence; and (5) the trial court erred when it ordered that the son's food and gas expenses be paid from his college account. We are not persuaded by any of these arguments.

The scope of our review of an order issued by the Family Part following a plenary hearing is limited. Cesare v. Cesare, 154 N.J. 394, 411-13 (1998). We will not disturb the factual findings made if they are supported by substantial, credible evidence in the record. MacKinnon v. MacKinnon, 191 N.J. 240, 253-54 (2007) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261,

A-5450-16T4

279 (2007)).  We review legal conclusions on a de novo basis.  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Several well-established principles govern whether a court should modify or terminate alimony.  First, if the parties had originally agreed to the amount and conditions of alimony, that agreement should be enforced like any other settlement agreement.  Quinn v. Quinn, 225 N.J. 34, 44-46 (2016).  "A settlement agreement is governed by basic contract principles."  Id. at 45 (citing J.B. v. W.B., 215 N.J. 305, 326 (2013)).  Accordingly, a court's role is to "discern and implement the intentions of the parties" as expressed in the agreement.  Ibid. (citing Pacifico v. Pacifico, 190 N.J. 258, 266 (2007)).

Second, unless the parties have agreed otherwise, alimony "may be revised and altered by the court from time to time as circumstances may require." N.J.S.A. 2A:34-23.  To justify a modification or termination, the moving party must show "changed circumstances."  Lepis v. Lepis, 83 N.J. 139, 146 (1980). In Lepis, the Court recognized a non-exhaustive list of factors that give rise to changed circumstances warranting modification or termination of alimony.  Id. at 151-52.  Similarly, in N.J.S.A. 2A:34-23(k) and (l), the Legislature identified factors a court needs to consider when a party seeks to modify alimony.  Those factors include, among other things, the financial circumstances of the parties,

whether the change in circumstances is temporary or permanent, whether the change was voluntary; whether it was motivated by bad faith or a desire to avoid payment; and whether the change in circumstances renders the payor unable to meet the alimony obligation.  See N.J.S.A. 2A:34-23(k) to (l); see also Lepis, 83 N.J. at 151-52; Larbig v. Larbig, 384 N.J. Super. 17, 22-23 (App. Div. 2006); Glass v. Glass, 366 N.J. Super. 357, 370-71 (App. Div. 2004).

Applying our standard of review and the legal principles governing alimony, we discern no basis to reverse the June 30, 2017 order.  The record amply supports Judge Marino's factual findings and, in light of those findings, her legal conclusions are sound.  We will briefly address the arguments raised by plaintiff.

Plaintiff first contends that the trial court erred when it determined that the imputed income in the PSA was not a floor for the purpose of calculating alimony.  We agree with Judge Marino that there is no language in the parties' PSA that suggests that the imputed income was a permanent floor.  Plaintiff argues that the words "imputed income" are synonymous with "income floor." Plaintiff, however, cites no case or authority for that contention.

By arguing that the phrase "imputed income" created a permanent floor as to defendant's alimony obligation, plaintiff essentially contends there is an anti-

Lepis clause in the PSA. An anti-Lepis clause is a provision wherein parties waive modification of alimony based on a change of circumstances. See Morris v. Morris, 263 N.J. Super. 237, 245-46 (App. Div. 1993). Such a clause must clearly state that the change-of-circumstances standard does not apply, or detail how the parties intend to handle modification of alimony requests. See, e.g., id. at 240 ("The parties hereby waive their rights for modification based upon changed circumstances as set forth in the case of [Lepis v. Lepis, 83 N.J. 139 (1980)]."). Parties who "bargain for a fixed payment or establish [their own] criteria for payment to the dependent spouse," must have "full knowledge" of their departure from the Lepis modification standard. Id. at 241. Therefore, courts will not read an anti-Lepis clause into a PSA.

The PSA here states: "Alimony has been calculated using an imputed income of $125,000 for the Husband and an imputed income of $40,000 for the Wife." The PSA contains no language waiving the Lepis modification standard nor does it contain language limiting defendant's ability to seek a reduction in alimony should his income fall below $125,000. The words "imputed income" do not establish an anti-Lepis clause because imputed income can change, and thus is subject to review based on a change of circumstances.

9

Moreover, as there was no deviation in the PSA from the modification standard of Lepis, Judge Marino did not need to impute income to defendant. Courts may impute income when a party, "without just cause, is voluntarily unemployed or underemployed." Caplan v. Caplan, 182 N.J. 250, 268 (2005). Here, plaintiff did not argue to the Family Part that defendant was unemployed or underemployed. Rather, plaintiff acknowledged defendant was self-employed and argued that he was inaccurately reporting his income. Thus, as the issue of unemployment or underemployment was never raised, Judge Marino had no basis to impute income to defendant.

We also reject plaintiff's contention that the result in this case will "open the floodgates to both recipient and payor spouses who seek modification of their settlement agreements where imputations of income are made by consent." The well-established principles needed to demonstrate a change of circumstances apply when alimony is originally based on income established by an earnings history. Thus, those same principles should and do apply when alimony is initially based on imputed income.

Plaintiff next argues that defendant failed to demonstrate a change of circumstances that substantially impaired his ability to support himself. At the plenary hearing, the parties presented evidence and arguments concerning their

10

financial circumstances, their marital lifestyle, their current earnings, and their financial assets. Judge Marino found that defendant had demonstrated a permanent adverse change in his financial circumstances. That finding of fact is amply supported by evidence presented at the plenary hearing.

Next, plaintiff contends that the trial court's analysis of defendant's income was flawed because the trial court did not scrutinize defendant's self-employment status and his earning capacity. A review of the record rebuts this argument. At the plenary hearing, both parties testified extensively concerning defendant's past and present self-employment status. Moreover, both parties presented experts who had examined defendant's self-employment businesses and offered opinions concerning defendant's earnings. Judge Marino then made fact findings based on her analysis of the testimony and her credibility findings. Those findings are also amply supported by the record developed at the plenary hearing.

Plaintiff also takes specific issue with certain of the trial court's factual findings. In particular, she disputes the judge's credibility findings regarding plaintiff's testimony concerning the parties' joint tax returns, plaintiff's ability to maintain the lifestyle contemplated when the parties entered into the PSA, and the court's finding that plaintiff did not waive certain claims in reliance on the

11

receipt of alimony. In her thorough, twenty-five-page written opinion, Judge Marino detailed each of her factual findings and her credibility findings. Having reviewed the record in light of each of the arguments made by plaintiff, we reiterate that all of the factual findings made by Judge Marino are based on substantial, credible evidence in the record. Moreover, her credibility findings were well-articulated and are unassailable.

Finally, we discern no error in the provision of the order requiring the son's future food and gasoline expenses to be paid from his college account. In their PSA, the parties had established certain accounts for the children's college expenses. Plaintiff presented evidence that defendant used funds from the son's college account to pay for non-educational expenses. Accordingly, the judge ordered defendant to reimburse the account in the amount of $2538. The judge also acknowledged plaintiff's position that certain of the son's expenses were being paid from the child support obligation. Nevertheless, the judge also found that it was reasonable that transportation and food expenses related to attending college should be paid out of the college account. We discern no abuse of discretion in that decision.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12