**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1262-17T4

M.D.,

    Plaintiff-Appellant,

v.

M.D.,

    Defendant-Respondent.

_____

Argued January 29, 2019 – Decided February 27, 2019

Before Judges Suter and Firko.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-1875-07.

Charly Gayden argued the cause for appellant.

Claire Scully argued the cause for respondent.

PER CURIAM

Plaintiff M.D.[1] appeals the denial of his post-judgment motion to terminate permanent alimony based on defendant M.D.'s alleged cohabitation. He argues that the trial court erred in denying his motion, and by failing to permit discovery and schedule a plenary hearing. For the reasons that follow, we reject these arguments and affirm.

I.

The parties married in 1998 and had no children. Ten years later, they entered into a Property Settlement Agreement (PSA) addressing various issues, including alimony. Both parties were represented by counsel.

Relevant to this appeal, the PSA provided that plaintiff would pay defendant permanent alimony of $165 per week.[2] The PSA contained the following termination of alimony clause:

> The obligation of the [plaintiff] to pay alimony to [defendant] shall end upon (a) the death of [defendant] (b) the remarriage of [defendant] (c) commencement of co-habitation by [defendant] with another man (subject to the standards set forth in Gayet v. Gayet, 92 N.J. 149 (1983)[)] or the (d) death of [plaintiff] whichever event occurs first. Thereafter, both parties permanently waive any right to receive alimony, maintenance and/or support in any form whatsoever from the other party. It is expressly understood and agreed that the presence of

---

[1] We use initials to protect the privacy of the parties.

[2] Plus $10 per week towards arrearages until paid.

a <u>paid</u> caregiver who resides with [defendant] and who provides assistance with respect to [defendant's] <u>Activities of Daily Living</u> shall not be considered to be co-habitation.

[(Second emphasis added).]

In addition, the following anti-<u>Lepis</u>[3] clause was set forth in the PSA:

Each party acknowledges that the alimony provisions set forth herein shall not be affected by the past, present and/or future income or financial circumstances of either or both of the parties. The within waiver takes into consideration any change in circumstances, including but not limited to, loss of health, disability and/or unemployment. Neither party shall ever have responsibility for the payment of the other's medical bills or insurance in the event of the other party's loss of health, catastrophe, injury or permanent disability. Each party has had his or her respective rights and duties fully explained to them in consideration of all the matters and things assigned and transferred to each by the other, and in consideration of the other promises contained herein does hereby forever release, waive and discharge the other from any additional right, duty or obligation for alimony, support or maintenance, either temporary or permanent. As to alimony or support for either party, both parties have had the holding of <u>Lepis v. Lepis</u>, 83 N.J. 139 (1980) explained and each party waives the right to seek modification of this waiver of support regardless of any change in circumstances to either or both parties.

---

[3] <u>Lepis v. Lepis</u>, 83 N.J. 139 (1980).

A-1262-17T4

A final judgment of divorce incorporating the PSA was entered on September 30, 2008.

In July 2004, defendant, a nurse, suffered a severe back injury while lifting a patient. Her injury required three surgical procedures that were performed prior to the divorce. The parties dispute their date of separation – 2006 according to plaintiff and 2004 according to defendant. Regardless of their different recollections, it is undisputed that prior to the divorce, plaintiff moved out of the former marital home in Pennsylvania and relocated to New Jersey. Plaintiff claims that he had "no knowledge" of defendant's purported paramour, J.M., moving in with her. Defendant denies ever having a romantic relationship with J.M. and referred to him as a "brother" in her certification submitted in response to plaintiff's motion. J.M. socialized with defendant's family over the years, and they appear in photographs together, according to her certification.

After moving to New Jersey, plaintiff broke into defendant's residence and she observed him "destroying [her] home and belongings," and acting "crazily." For her protection, defendant contends that J.M. stayed with her that night and moved in with her in late 2007, after the complaint for divorce was filed and following her third surgery, to serve as her caretaker and to protect her from plaintiff. During the pre-trial phase of the divorce proceedings, plaintiff argues

4

that he attempted to subpoena J.M., a non-party, for a deposition in February 2008, and he did not appear.[4] Our review of the record does not reveal that J.M. was served with a deposition subpoena within the State of New Jersey or that a petition for issuance of a commission, pursuant to Rule 4:11-5, to take his deposition in the Commonwealth of Pennsylvania was made. Thus, according to defendant, there is no element of surprise as plaintiff claims.

Plaintiff argues that J.M. is cohabitating with defendant as defined by the termination of alimony clause. Six years following the divorce, plaintiff hired

---

[4] The record reflects that J.M. was a Pennsylvania resident. Rule 4:14-7(b)(1) provides:

> A resident of this State subpoenaed for the taking of a deposition may be required to attend an examination only at a reasonably convenient time and only (A) in the county of this State in which he or she resides, is employed or transacts business in person; or (B) at a location in New Jersey within 20 miles from the witness's residence or place of business; or (C) at such other convenient place fixed by court order. A nonresident of this State subpoenaed within this State may be required to attend only at a reasonably convenient time and only in the county in which he or she is served, at a place within this State not more than 40 miles from the place of service, or at such other convenient place fixed by court order. The party subpoenaing a witness, other than one subject to deposition on notice, shall reimburse the witness for the out-of-pocket expenses and loss of pay, if any, incurred in attending at the taking of depositions.

A-1262-17T4

a private detective to conduct surveillance of defendant, and it was only then he ostensibly learned about her cohabitation, and that she moved from East Stroudsburg to Bethlehem. After a few "drive-bys" past defendant's residence and finding undated and unauthenticated social media photos of M.D. and J.M., the investigator concluded that the two were "paramours" and "cohabitating." Defendant opposed the motion and challenged the issue of cohabitation by countering that plaintiff introduced her to J.M., who was plaintiff's Alcoholics Anonymous sponsor, and that plaintiff was aware of J.M. living with her since 2006. She concedes living with J.M. in a caregiving role, in separate bedrooms. They do not commingle finances according to her certification. In exchange for free rent, J.M. performs household chores, such as grocery shopping, laundry, yardwork, and cooking.

A pretrial case management order indicates that plaintiff requested discovery as to "contribution to living expenses by live-in significant others," evidencing his awareness of a potential cohabitation issue, but apparently he did not pursue it. In March 2008, defendant was declared totally and permanently disabled by the New Jersey Division of Workers' Compensation and this determination was acknowledged in the PSA.

By order entered on September 8, 2017, following oral argument, the trial court denied plaintiff's motion. During oral argument, the judged queried, "does she have a ring on her finger[?] Are their finances intertwined[?]" With regard to defendant's circumstances, the court "found it very compelling that [the parties] actually went so far as to distinguish cohabitation from a person giving [defendant] assistance every day." Based upon the language in the PSA, the court found that plaintiff "must have known" and must have been aware of J.M. residing with defendant pre-divorce because plaintiff asked for discovery and noticed his deposition.

Plaintiff contends that the Fair Labor Standards Act[5] distinguishes domestic service workers from companions, and that the term "paid caregiver," as stated in the PSA, is ambiguous, warranting a hearing. We are not persuaded by plaintiff's arguments. Our careful review of the record reveals that the trial judge considered plaintiff's arguments by concluding:

> The problem is of course you have the word paid in there . . . . You know when we go down to one word I have to say what's the theme of this case[?] [W]hat's the spirit of this case[?] He's paid, you know. Do I say to the lawyers you guys are all responsible for the money here because you should have used the word compensated[?] I don't get it.

---

[5] 29 U.S.C. § 206.

The judge aptly addressed J.M. being provided with housing and that the parties "understood that this is not going to be cohabitation with this person living there." The court concluded that plaintiff failed to meet the burden required to terminate his alimony obligation. We agree.

II.

A court has the equitable authority to modify support obligations set forth in a property settlement agreement. Lepis, 83 N.J. at 149. But, "[a]n application to modify an agreement is an exception, not the rule," as judges should contemplate that agreements entered into in good faith "shall be performed in accordance with their terms." Glass v. Glass, 366 N.J. Super. 357, 379 (App. Div. 2004); see Avery v. Avery, 209 N.J. Super. 155, 160 (App. Div. 1986) (noting "there is a strong public policy favoring stability of consensual arrangements for support in matrimonial matters" (citing Lepis, 83 N.J. at 141)).

"As a practical matter, spousal agreements have great potential for ensuring the desired degree of stability in support arrangements." Lepis, 83 N.J. at 153-54 (citing Petersen v. Petersen, 172 N.J. Super. 304 (App. Div. 1980); De Graaff v. De Graaff, 163 N.J. Super. 578 (App. Div. 1978)). "Such agreements have traditionally been more comprehensive and particularized than court orders, and thus more carefully tailored to the peculiar circumstances of the

A-1262-17T4

parties' lives." Id. at 154. Accordingly, such agreements are "entitled to significant consideration." Glass, 366 N.J. Super. at 372; see Ozolins v. Ozolins, 308 N.J. Super. 243, 249 (App. Div. 1998) (reversing the termination of alimony and finding that the judge erred in failing to "factor in the principle that the amount of alimony here was set originally by the parties themselves," as such agreements ordinarily include trade-offs between the parties). Only when circumstances arise where enforcement of the agreement becomes inequitable should an exception be made to the strict enforcement of the agreement's terms. Glass, 366 N.J. Super. at 379.

Parties are free to enter into voluntary agreements departing from the general Lepis rule and establish their own standards by which they agree to be guided in cases involving "reasonably foreseeable future circumstances . . . ." Morris v. Morris, 263 N.J. Super. 237, 241 (App. Div. 1993). Anti-Lepis provisions, which purport to waive the right to future modification, are enforceable in certain limited circumstances. Ibid. The party seeking modification has the burden of demonstrating such changed circumstances as would warrant relief from his or her obligation. Notably, plaintiff does not challenge the validity of the anti-Lepis provision.

Viewed broadly, the parties' negotiated PSA contained trade-offs that were freely and fairly negotiated, with the assistance of counsel on both sides. There is no evidence that the cohabitation and anti-Lepis provisions were not knowingly and voluntarily negotiated. See Konzelman v. Konzelman, 158 N.J. 185, 203 (1999); see also Quinn v. Quinn, 225 N.J. 34, 50 (2016). When a judge finds that the spouse receiving alimony has cohabited, the obligor spouse is entitled to full enforcement of the parties' agreement. This case is different, and turns on the uniquely tailored termination of alimony provision. Plaintiff makes no allegations of improprieties, fraud, overreaching, or coercion, and each party was represented by counsel. See Konzelman, 158 N.J. at 199.

Based upon a careful review of the record, the judge pointed out that J.M. was residing with defendant prior to executing the PSA, and duly rejected plaintiff's claim that he was unaware that J.M. was residing with defendant because, "even if he wasn't told, it's clear that it was intended." Therefore, plaintiff has not established a prima facie case of changed circumstances, and we find no error. Moreover, the PSA was brought to the attention of the trial court and given judicial approval when it was incorporated into the divorce decree.

A-1262-17T4

There is no indication that the court abused its discretion in giving effect to the cohabitation and anti-Lepis provisions and by denying plaintiff's application to terminate his alimony obligation. Similarly, as no issues of material fact required resolution by the trial court, there was no basis for an evidentiary hearing. See Adler v. Adler, 229 N.J. Super. 496, 500 (App. Div. 1988) (holding that a hearing is not required, or even warranted, in every contested proceeding for alimony modification, but only where "necessary to resolve a genuine issue of material fact . . ."). We agree with the trial court that a hearing was not required.

## III.

Here, the trial court made scant findings of fact and conclusions of law, and noted in her order that "an explanation was unnecessary," citing Rule 1:6-2(f). A trial court is required "by an opinion or memorandum decision, either written or oral, [to] find the facts and state its conclusions of law thereon . . . on every motion decided by a written order that is applicable as of right . . . ." R. 1:7-4(a).

A-1262-17T4

We do not need to address this issue because it does not change the result, and we conclude that the trial court did not abuse its discretion in denying plaintiff's motion.

Plaintiff's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION