**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1363-17T2

FRANCES J. HOFFMAN,

     Plaintiff-Respondent,

v.

BRUCE W. HOFFMAN,

     Defendant-Appellant.

_____

Argued January 16, 2019 - Decided February 15, 2019

Before Judges Koblitz, Currier and Mayer.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-0908-98.

Bruce W. Hoffman, appellant, argued the cause pro se.

Frances J. Hoffman, respondent pro se.

PER CURIAM

Plaintiff Frances J. and defendant Bruce W. Hoffman were married in 1981; had four children, the youngest of whom was emancipated in 2016;

entered into a property settlement agreement (PSA), after days of negotiations, in November 1999; and were divorced on January 19, 2000. During negotiations to reach the PSA, as well as the divorce proceedings, both parties were represented by counsel and had forensic accountants.

Now, nearly twenty years and "a multitude of motions" later, defendant maintains that (1) plaintiff committed fraud during the execution of the PSA; (2) defendant is entitled to $225,000 in counsel fees; (3) defendant's alimony and arrearages should have been terminated; and (4) under Rule 4:50, defendant is entitled to an equitable distribution plenary hearing. Defendant has essentially been making these four arguments repeatedly since approximately 2003, and each court that has heard these arguments has denied defendant relief. We now affirm the most recent denial of relief.

Throughout his appellate brief, defendant's primary argument is that plaintiff committed fraud and "cooked books" of Hoffman's Ice Cream, which defendant owned. Defendant asserts that plaintiff fraudulently imputed to him a net income of $290,000 per year. According to plaintiff, it was defendant who provided the forensic accountants "with all of the information they requested and required."

Defendant stopped making his support payments approximately eleven months after the judgment of divorce (JOD) was entered and has been arrested at least four times as a result. After leaving a successful ice cream business, and subsequently working minimum wage jobs, defendant asserts that his support obligations should be terminated. The trial court found defendant failed to provide sufficient evidence of changed circumstances.

Defendant made multiple motions to vacate the PSA, all of which were denied. His previous appeals were also unsuccessful. In our last opinion we wrote:

> Defendant's numerous attempts to reduce his alimony and child support obligations, re-litigate the equitable distribution, and vacate the JOD have been rejected by the trial court and affirmed by this court. Hoffman v. Hoffman, No. A-986-03 (App. Div. May 27, 2004); Hoffman v. Hoffman, No. A-4509-05 (App. Div. May 4, 2007); Hoffman v. Hoffman, No. A-4259-07 (App. Div. June 1, 2009); Hoffman v. Hoffman, No. A-4309-10 (App. Div. Dec. 2, 2011); Hoffman v. Hoffman, No. A-5632-12 (App. Div. June 26, 2014). Appeals to our Supreme Court have resulted in dismissals. Hoffman v. Hoffman, 200 N.J. 365, 981 (2009), cert. denied, 559 U.S. 903 (2010); Hoffman v. Hoffman, 210 N.J. 27 (2012). The United States Supreme Court has denied a petition for certiorari, Hoffman v. Hoffman, 559 U.S. 903 (2010), and a subsequent motion for rehearing, Hoffman v. Hoffman, 559 U.S. 1117 (2010).
>
> The present appeal arises out of a January 29, 2015 order in which the Family Part judge addressed a

3

myriad of applications made by defendant, including terminating his alimony and child support obligations, re-litigating equitable distribution, requiring plaintiff to pay him a retainer for counsel fees and other issues.

[Hoffman v. Hoffman, No. A-3117-14 (App. Div. Feb. 6, 2017) (slip op. at 2-3).]

We determined in our most recent prior appeal that defendant failed to supply current financial information as ordered by the trial court to allow an alimony adjustment. Id. at 2-4. We also affirmed the court's denial of defendant's request to eliminate child support arrears. Id. at 3-4.

Now, approximately two years after our prior decision, we review a September 15, 2017 order again denying defendant's motion to (1) require plaintiff to pay defendant $225,000 in counsel fees; (2) terminate defendant's alimony requirements; (3) eliminate alimony arrearages; (4) eliminate child support arrearages; (5) reinstate defendant's passport; and (6) hold a plenary hearing for equitable distribution. We also review an October 27, 2017 order denying reconsideration.

In the PSA, which was placed on the record on November 10, 1999, the parties agreed that starting December 1, defendant would pay $50,000 in alimony and $45,000 annually in child support until September 1, 2000, when alimony would increase to $80,000 annually.

The parties also agreed that plaintiff would be entitled to the former marital home. Defendant would transfer his interest in the home to plaintiff. Plaintiff also agreed "to waive any and all interest that she may have in the business known as Hoffman's Ice Cream of Spring Lake and the Hoffman's ice cream business which is in Point Pleasant." As a result, defendant would "make sure and provide proof that [plaintiff had] been taken off of any accounts associated with the business . . . ."

As for defendant's income, the PSA indicated: "It's further agreed that the support that was just enunciated to the [c]ourt will be based upon the $290,000 net income to the, to [defendant] and zero income to [plaintiff]."

Defendant's counsel added that the parties agreed that neither would make an application to modify the support before March 2002, "absent some extraordinary change in circumstance. . . . We used the word extraordinary as a defining character." Defense counsel continued:

> As a discovery disclosure we have agreed that the parties have relied upon the advice of their respective accountants and financial advisors in negotiating this agreement. Each party agrees that the reports prepared by their experts will not be utilized in any subsequent court proceeding or application for financing except that which has already been submitted to the [c]ourt as part of a pleading.

5

Defendant confirmed that he understood the PSA and believed it was "fair and equitable under all of the circumstances of [the] case." Defendant did, however, indicate a concern about his "ability to maintain the [ice cream] stores at the current level." The court informed defendant that under the PSA, until March 2002, defendant could not seek a modification to his support obligations, and defendant's counsel and the court informed him that modification would not occur "[a]bsent an extraordinary circumstance" such as a natural disaster or a "medical or physical or emotional disability."

The court also asked several questions of defendant:

> Q: You had several accountants and an attorney representing you in this matter because of the complexity of the financial issues, correct?
>
> A: Yes.
>
> Q: And you relied on the information they provided to you?
>
> A: That is correct.
>
> Q: And you're satisfied with their services, correct?
>
> A: Yes, Your Honor.

In his July 2017 motion, defendant argued that plaintiff provided a fraudulent cash flow analysis identifying his income, improperly imputing a $290,000 yearly income to defendant. Defendant acknowledged that eleven

6

months after the JOD was entered, he ceased all payments of child support and alimony.

Defendant also indicated his disagreement with prior court determinations that plaintiff did not commit a fraud or inflate his income. In addition, he asserts his ice cream business began to run into trouble in 2003, and stores closed in 2004 as a result of unpaid rent.

Defendant also argued that plaintiff fraudulently misrepresented to the court the value of their marital home when she stated it was worth $625,000 but sold it eight months later for $1,799,000. Plaintiff agreed at oral argument before the judge that the house increased in value due to an upswing in the housing market.

In addition, defendant claimed that as a result of an expert's employability evaluation in 2005, he could only expect a base salary of $8.26 per hour. As a result, defendant's net pay after wage garnishment and child support put him below the poverty level. Defendant's arrearages exceed one million dollars.

In her opposition to defendant's motion, plaintiff alleged that defendant was abusing the judicial process, for many years, in order to be released from his obligations under the PSA. Plaintiff pointed out that it was defendant's

A-1363-17T2

choice to remove himself from the ice cream business, and despite his arguments to the contrary, the stores expanded.

As for defendant's ability to maintain his support obligations, plaintiff informed the motion judge at oral argument:

> My only and the strongest evidence that there is, that the defendant could have maintained his support, is that Hoffman's Ice Cream is still open. It is now owned by his cousins or cousins in the family. The lines are still out the door. There were never a new set of books provided by the defendant to say this is where my income has dropped. He just said I've been evicted by my father and they have proceeded to open up two more stores and it's successful and an ice cream truck, so I don't see where the business could have failed nor has he provided that proof.
>
> I think everything that has been decided prior to all of these dates and all of the history has been on target, has been fair, and he's just not happy with it because he chose to give up the asset that he received. I chose to maintain it. I did not cash out the checks and store them and compound interest on them. I used it to pay for the house, pay for the children's education, medical, dental, that he did not maintain, as he was suppose[d] to. I supported the children in every way.

On September 15, 2017, the motion judge found that "much of [defendant's] application is a motion for reconsideration of prior court rulings." The judge found defendant's claims of fraud by plaintiff and his "application to vacate the PSA and JOD and schedule a plenary hearing on those issues" were

8

"addressed multiple times in the past," and rather than present new evidence, defendant simply argued that the prior court rulings were incorrect. Defendant's application for reconsideration was "well beyond the [twenty] day time period [under Rule 4:49-2] for the court to revisit any such decisions and that, alone, [was] a basis to deny the application . . . ." Defendant "merely [sought] to reargue those matters specifically raised, and expressly addressed, by the prior courts."

The judge next addressed defendant's argument that plaintiff committed fraud, and therefore, under Rule 4:50-1, the JOD and PSA must be vacated. In particular, "[d]efendant argue[d] that the income of $290,000.00 annually was only imputed to him because the [p]laintiff inflated the income of the two ice cream stores when she provided the books to her accountant." The judge found that defendant failed to provide new evidence to support his claim that plaintiff committed fraud. "[A]bsent 'unconscionability, fraud, or overreaching in the negotiations of the settlement . . . no legal or equitable basis exists to reform the parties' property settlement agreement.'" (alteration in original) (quoting Miller v. Miller, 160 N.J. 408, 419 (1999)). The judge found defendant was represented by counsel at the time of the PSA, and did not claim ineffective assistance of counsel. He said "multiple courts have found [p]laintiff did not engage in any

fraud and [d]efendant has not put forth any evidence upon which to reconsider those prior rulings nor substantiate this court finding a question of fact on same, nor that [plaintiff] withheld any information prior to, or since, the divorce."

Noting that "alimony obligations 'are always subject to review and modification on a showing of "changed circumstances"'" under <u>Lepis v. Lepis</u>, 83 N.J. 139, 146 (1980), the judge found defendant failed to make a prima facie showing of changed circumstances based on a reduction in income. In addition, the judge found

> [i]n the present case, [d]efendant outlines nothing he has undertaken to improve his position nor to establish any efforts on his part other than maintaining a minimum wage job for [ten] years. The [d]efendant was about forty-six . . . years of age when his career through the [i]ce [c]ream business ended. That age is well below the standard age of retirement, sixty-five . . . . Further, many persons work well beyond sixty-five . . . years of age. There is nothing to suggest the [d]efendant was in poor health when he chose to leave the ice cream store business.

The judge next denied defendant's request to vacate his support obligation arrears because there was "no basis to grant such relief." The judge then addressed defendant's request to have his passport reinstated and found defendant failed to present an argument or rationale for his request. The judge also denied defendant's request for a plenary hearing. On October 27, 2017, the

A-1363-17T2

judge denied defendant's motion for reconsideration, finding defendant was merely rearguing the matter.

We afford deference to the factual findings of the family court. Thieme v. Aucoin-Thieme, 227 N.J. 269, 282 (2016). This is due to "the family courts' special jurisdiction and expertise in family matters . . . ." Cesare v. Cesare, 154 N.J. 394, 413 (1998).

Fraud Allegations

Under Rule 4:50-1, a party may move for relief "from a final judgment or order for the following reasons:"

> (a) mistake, inadvertence, surprise, or excusable neglect;
>
> (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49;
>
> (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
>
> (d) the judgment or order is void;
>
> (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or

(f) any other reason justifying relief from the operation
of the judgment or order.

In order to timely raise a claim of fraud, or a claim arising under subsections (a) or (b), the party seeking relief must file its motion "not more than one year after the judgment, order or proceeding was entered or taken." R. 4:50-2. Requests for relief arising under subsections (d), (e) and (f) of Rule 4:50-1 must be brought "within a reasonable time . . . ." Ibid.

Defendant's allegations of fraud, purportedly occurring nearly twenty years ago, have been litigated unsuccessfully by him many times. Repeated litigation of the same issues is burdensome to the other party and the court system, and is not permitted. See In re. Dawson, 136 N.J. 1, 20-21 (1994) (explaining that collateral estoppel precludes a party from relitigating an issue if there was a final determination of the same essential issue after litigation with the same party); see also Linek v. Korbeil, 333 N.J. Super. 464, 471, 474 (App. Div. 2000) (noting that collateral estoppel and res judicata bar claims when "the opportunity to relitigate an issue is sought").

<u>Modification of Spousal Support</u>

Our Supreme Court created a two-pronged procedural standard for modification of spousal support agreements. Lepis, 83 N.J. at 157. First, the party seeking a modification bears the burden of making a prima facie showing

of changed circumstances.  Ibid.  Changed circumstances that may warrant a modification include:

> (1)  an increase in the cost of living;
> (2)  increase or decrease in the supporting spouse's income;
> (3)  illness, disability or infirmity arising after the original judgment;
> (4)  the dependent spouse's loss of a house or apartment;
> (5)  the dependent spouse's cohabitation with another;
> (6)  subsequent employment by the dependent spouse; and
> (7)  changes in federal income tax law.
>
> [Id. at 151 (citations omitted).]

Second, and only after the moving party has made a prima facie showing, the court may then order discovery and a plenary hearing to determine whether the supporting spouse has an ability to pay.  Id. at 157.  Defendant previously failed to comply with such an order and we affirmed the dismissal of his claim. Hoffman v. Hoffman, No. A-3117-14 (App. Div. Feb. 6, 2017) (slip op. at 2-4).

### Counsel Fee Award

Defendant argues that because plaintiff is a "multimillionaire" who committed fraud upon the court and because his employment opportunities are poor, the trial court should have granted defendant's request for a $225,000 counsel retainer from plaintiff.  Defendant acknowledges he moved for relief from his support obligations due to changed circumstances on multiple

13

occasions over the course of this litigation and the trial courts did not find any changed circumstances. He also previously sought to eliminate his support arrears and alleged fraud in the original PSA. An award of counsel fees to relitigate issues already resolved is counterproductive and unwarranted.

Any remaining arguments not discussed above are without sufficient merit to require discussion in a written opinion. R. 2:11-3(e)(1)(E). Defendant has not demonstrated any abuse of discretion or other error in the thoughtful and comprehensive decisions of the motion judge.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1363-17T2