**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0428-22

J. D.,[1]

     Plaintiff-Appellant,

v.

C. D.,

     Defendant-Respondent.

_____

Argued November 4, 2024 – Decided December 3, 2024

Before Judges Sabatino and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-0710-02.

Thomas D. Baldwin argued the cause for appellant (Chiesa Shahinian & Giantomasi, PC, attorneys; Thomas D. Baldwin and Samantha Weckenman, on the briefs).

---

[1] We use initials for the parties to protect the confidentiality of their financial records in this Family Part matter, which includes confidential appendices and issues concerning a non-emancipated child. <u>R.</u> 1:38-3(d)(1).

Christopher L. Garibian argued the cause for respondent (Weinberger Divorce & Family Law Group LLC, attorneys; Christopher L. Garibian, of counsel and on the brief).

PER CURIAM

In this post-judgment matrimonial case, plaintiff J.D. appeals from an August 26, 2022 order of the Family Part terminating defendant C.D.'s alimony obligation, ordering the parties to share equally the expenses for their unemancipated child's college costs, and declining both parties' applications for counsel fees. The court reached these determinations after an extensive, multi-day plenary hearing.

We affirm the trial court's merits rulings, substantially for the sound reasons set forth in the court's detailed opinion. We remand the matter solely with respect to counsel fees, an issue which necessitates a more fulsome statement of reasons addressing the factors of Rule 5:3-5(c).

Since the parties are both well familiar with the record, we need not describe the facts here comprehensively. The following summary will suffice for our purposes.

The parties were married for seventeen years and had four children. They divorced in 2003. At the time of the divorce, they entered into a Property Settlement Agreement ("PSA") that provided, in relevant part, that defendant

would pay plaintiff $8,000 per month in permanent alimony. The alimony provision, which was drafted by the parties' predecessor counsel, contained no "anti-Lepis" clause hindering the court's ability to modify or terminate the alimony award upon a proven change of circumstances.[2]

In April 2018, defendant was discharged at the age of fifty-seven from his executive position in finance at an international bank, where he was earning more than $500,000 per year, inclusive of bonuses. Despite his efforts to find comparable employment in the finance and banking industry since his termination six years ago, he has been unable to obtain a position in his field with equivalent income.

Since his discharge, defendant has generated income of about $130,000 annually, primarily through teaching finance courses as an adjunct instructor at multiple different colleges and modest revenues from books he has authored. In the meantime, he used the services of a reemployment expert to help him, as a man in his late-fifties and now in his mid-sixties, find comparable employment. Defendant testified he initiated over a thousand phone calls and emails to banks

---

[2] Lepis v. Lepis, 83 N.J. 139, 157 (1980) (authorizing termination or modification of spousal or child support based on proof of changed circumstances).

A-0428-22

and other financial institutions in his job search, to no avail. He continued to contribute toward the college expenses of the parties' youngest child; the three older children are all emancipated.

Plaintiff generated minimal income as of the time of the parties' divorce twenty-one years ago. However, she has since been able to become employed full-time as a nurse earning approximately $100,000 per year,[3] in addition to the alimony payable from defendant.

Defendant moved to terminate, or in the alternative, reduce, his permanent alimony obligation to plaintiff. He asserted changed circumstances stemming from his considerable loss of income due to being discharged from his former banking position, coupled with plaintiff's increase of her income since the 2003 divorce. He presented financial evidence of his present income and expenses, reflecting that he has a monthly deficit of about $3,556. The judge found his testimony "extremely credible."

Plaintiff, meanwhile, has a modest monthly deficit, if any. The trial court noted inconsistencies in her testimony and case information statement on this subject. Although plaintiff testified she has a monthly surplus of about $2,500,

---

[3] Plaintiff's reported annual earnings varied somewhat in her testimony and in the financial documents submitted in the record.

her case information statement reflects a monthly deficit of $2,293, not accounting for the $2,000 she receives each month in rent from a person who has moved in with her. The judge found her testimony "generally credible."

The trial court's opinion extensively analyzed the ten statutory factors pertinent under N.J.S.A. 2A:34-23(k) for the termination or modification of the alimony payable by a non-self-employed party. Upon weighing those factors, the court terminated the alimony payable by defendant, effective the last day of trial testimony on April 5, 2022.

In its conclusions, the trial court reasoned:

> [N]either plaintiff nor defendant is able to fully meet his or her budget based upon his or her own income. Additionally, the [c]ourt acknowledges that the purpose of awarding alimony is to provide the dependent spouse the level of support and standard of living commensurate with the quality of economic life that existed during the marriage. However, based upon the substantial reduction in defendant's income, neither party is able to enjoy the standard of living commensurate with the quality of economic life that existed during the marriage. This is despite the fact that there has been a substantial increase in plaintiff's income which to some degree offsets defendant's loss of income.
>
> Although the [c]ourt can certainly order that defendant [] utilize his savings and other assets to meet his alimony obligation to plaintiff, it is important to note that the defendant has already done so during the pendency of this action by invading his retirement

5

accounts to meet his alimony obligation and the income tax liability arising from the liquidation of that account. The [c]ourt finds that defendant has proved by a preponderance of the credible evidence that there has been a drastic reduction in defendant's income; that defendant has made a good faith effort to obtain comparable employment at a comparable income level; and that due to the improvement in plaintiff's financial circumstances, the parties are essentially in equipoise from a gross income perspective.

Therefore, the [c]ourt finds that defendant's alimony obligation to plaintiff shall terminate effective April 5, 2022, the last day of testimony in this matter as it was as of that date that the [c]ourt was able to conclude by a preponderance of the credible evidence that defendant had sustained a substantial and permanent change in his financial circumstances by virtue of his loss of employment and resulting loss of income.

The court also found that the remaining costs for the youngest child's college expenses "should be equally divided[,] particularly since defendant's contributions over and above the funding of the education [investment] account significantly exceed those contributions made by the plaintiff."

On appeal, plaintiff argues the trial court erred in ending defendant's alimony because their PSA had imposed upon him a permanent alimony obligation expressly terminable only upon death or remarriage. She maintains he failed to demonstrate a sufficient change of circumstances to warrant relief from the court, noting that he had filed two unsuccessful motions for such relief

6

years earlier before he lost his banking job.  She argues he is voluntarily underemployed in his present work as a college instructor.

Plaintiff further contends the trial court erred in finding defendant a credible witness, abused its discretion in omitting child support for the parties' then- unemancipated child[4] after it terminated alimony, and erred in denying her counsel fees.  Lastly, she argues this appellate court should exercise original jurisdiction to make de novo rulings on these issues, or, in the alternative, remand the matter to a different trial judge.

Defendant has not cross-appealed on any issues, including the court's denial of his own motion for counsel fees.

Courts review the interpretation of a matrimonial settlement agreement de novo.  Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020).  By contrast, we are bound by a trial judge's factual findings if they are "supported by adequate, substantial, credible evidence."  Cesare v. Cesare, 154 N.J. 394, 412 (1998).  "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'"  Ibid.  Reversal is appropriate only if the findings are "so manifestly unsupported by or inconsistent with the

---

[4]  We were advised at oral argument that the child has completed college and does not reside with either parent.

competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974). We review a trial court's ruling on a modification or termination of alimony under a deferential standard. Cardali v. Cardali, 255 N.J. 85, 107 (2023). We also recognize the Family Part's "special jurisdiction and expertise in family matters." Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016).

"Alimony is an 'economic right that arises out of the marital relationship and provides the dependent spouse with "a level of support and standard of living generally commensurate with the quality of economic life that existed during the marriage."'" Quinn v. Quinn, 225 N.J. 34, 48 (2016) (quoting Mani v. Mani, 183 N.J. 70, 80 (2005)). "Parties to a divorce action may enter into voluntary agreements governing the amount, terms, and duration of alimony, and such agreements are subject to judicial supervision and enforcement." Ibid. "Agreements between separated spouses executed voluntarily and understandingly for the purpose of settling the issue of [alimony and child support] are specifically enforceable, but only to the extent that they are just and equitable." Berkowitz v. Berkowitz, 55 N.J. 564, 569 (1970).

A-0428-22

A "trial court has the discretion to modify the agreement upon a showing of changed circumstances." Quinn, 225 N.J. at 49 (quoting Berkowitz, 55 N.J. at 569). Changed circumstances include "an increase in the cost of living, an increase or decrease in the income of the supporting or supported spouse, cohabitation of the dependent spouse, illness or disability arising after the entry of the judgment, and changes in federal tax law." J.B. v. W.B., 215 N.J. 305, 327 (2013). The party seeking modification has the burden of proving a change in circumstances warranting relief from the support or maintenance obligations. Lepis, 83 N.J. at 157.

Applications to modify (or, by logical implication, terminate) alimony are governed by N.J.S.A. 2A:34-23(k), which provides:

> When a non-self-employed party seeks modification of alimony, the court shall consider the following factors:
>
> (1) The reasons for any loss of income;
>
> (2) Under circumstances where there has been a loss of employment, the obligor's documented efforts to obtain replacement employment or to pursue an alternative occupation;
>
> (3) Under circumstances where there has been a loss of employment, whether the obligor is making a good faith effort to find remunerative employment at any level and in any field;

A-0428-22

(4) The income of the obligee; the obligee's circumstances; and the obligee's reasonable efforts to obtain employment in view of those circumstances and existing opportunities;

(5) The impact of the parties' health on their ability to obtain employment;

(6) Any severance compensation or award made in connection with any loss of employment;

(7) Any changes in the respective financial circumstances of the parties that have occurred since the date of the order from which modification is sought;

(8) The reasons for any change in either party's financial circumstances since the date of the order from which modification is sought, including, but not limited to, assessment of the extent to which either party's financial circumstances at the time of the application are attributable to enhanced earnings or financial benefits received from any source since the date of the order;

(9) Whether a temporary remedy should be fashioned to provide adjustment of the support award from which modification is sought, and the terms of any such adjustment, pending continuing employment investigations by the unemployed spouse or partner; and

(10) Any other factor the court deems relevant to fairly and equitably decide the application.

[N.J.S.A. 2A:34-23(k).]

"When parties seek to modify an alimony award, they must 'demonstrate that changed circumstances have substantially impaired the ability to support [themselves].'" D.M.C. v. K.H.G., 471 N.J. Super. 10, 32 (App. Div. 2022) (alteration in original) (quoting Lepis, 83 N.J. at 157). When deciding whether to modify an agreement because of changed circumstances the "proper criteria are whether the change in circumstance[s] is continuing and whether the agreement or decree has made explicit provision for the change.'" Quinn, 255 N.J. at 49 (quoting Lepis, 83 N.J. at 152). Moreover, "a decrease [of an alimony obligation] is called for when circumstances render all or a portion of support received unnecessary for maintaining that standard." Lepis, 83 N.J. at 153.

The court did not abuse its discretion in terminating defendant's alimony obligation after carefully considering these factors. Its finding that defendant was credible was supported by adequate, substantial, credible evidence in the record, and should not be disturbed.

The trial court did not misuse its role as a fact finder in placing little weight on defendant's alleged comments at a 2019 wedding reception, in which he reportedly told an in-law of his daughter that he had left a job interview after waiting to be seen for forty-five minutes and that he no longer wanted to work

11

as hard as he had in the past. The court considered defendant's testimony and explicitly found his recitation of his job search credible.

The court also reasonably determined from the evidence that defendant was not financially supporting his (now deceased) co-habitant. Further, the court reasonably found that defendant does not lead a lavish lifestyle. Notably, the court—in what appears to be a measure of equity in easing a transition for plaintiff—ordered defendant, despite his reduced earnings, to pay plaintiff in full the alimony arrears that had accumulated up through the time of trial, even though he had lost his banking job four years earlier.

The court was not obligated to award defendant child support for the parties' unemancipated child after it terminated alimony. We recognize the substantial annual alimony of nearly $100,000 appears to be why plaintiff waived child support in the 2003 PSA. Even so, the court had the discretion to omit an award of child support from its decision in 2022, given that the youngest child was by that time over the age of twenty-one and defendant had been the primary payor of the children's education fund account.

As a final item, we do note the court's denial of counsel fees to both parties at the end of the trial did not discuss the requisite factors under Rule 5:3-5(c). We consequently remand the matter to the trial judge for a statement of

12

reasons on that issue, and a ruling on any motion for appellate counsel fees potentially sought under Rule 2:11-4.

To the extent we have not addressed them, we have considered the remaining points raised on appeal, and they lack sufficient merit to warrant discussion.  R. 2:11-3(e)(1)(E).

Affirmed in part; remanded in part solely regarding counsel fees. Jurisdiction is not retained.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION